James C. CAIOLA, et al., Appellants,

v.

William H. CARROLL, et al., Appellees.

No. 86–5654.

United States Court of Appeals,
District of Columbia Circuit.

Argued March 10, 1988.

Decided July 1, 1988.

As Amended July 1, 1988.

C. William Tayler, with whom George M. Coburn, Washington, D.C., was on the brief, for appellants.

William J. Dempster, Asst. U.S. Atty., with whom Joseph E. diGenova, U.S. Atty., John D. Bates and R. Craig Lawrence, Asst. U.S. Attys. were on the brief, for appellees; Mary Coster Williams and Royce C. Lambert,* Asst. U.S. Attys., Washington, D.C., also entered appearances for appellees.

Before Circuit Judges RUTH BADER GINSBURG and WILLIAMS, and Chief Judge RE.**

Opinion for the Court filed by Chief Judge RE.

RE, Chief Judge:

Plaintiff-appellants, James C. Caiola and Elsa J. DeAngelis, appeal from a decision of the United States District Court for the District of Columbia which upheld, on cross-motions for summary judgment, an agency order barring them from doing business with the government for a 3–year term.

The question presented is whether the district court erred in upholding the decision of the Defense Logistics Agency (DLA), an agency of the Department of Defense, to debar appellants as "affiliates" or "contractors," or as officers or directors of Murdock Webbing, a corporation, who "knew or had reason to know" of the corporation's misconduct.

* At time brief was filed.

Whether tested under an abuse of discretion or substantial evidence standard, the DLA, we conclude, engaged in unreasonable decisionmaking. Since the DLA was inconsistent in its application of the regulations to the officers of Murdock Webbing, the district court erred in upholding the debarment of James Caiola and Elsa DeAngelis, and its order is reversed.

### THE FACTS

Murdock Webbing is a Rhode Island corporation of approximately 250 employees. The corporation has five officers who are also its directors. John A. DeAngelis, Chairman of the Board and controlling shareholder; his son, Don DeAngelis, Vice Chairman and Chief Executive Officer; James C. Caiola, President; Edward Lodge, Treasurer; and Elsa J. DeAngelis, Secretary. Elsa DeAngelis is the wife of John DeAngelis.

Pursuant to over 80 contracts, from October 9, 1980 to September 29, 1984, Murdock Webbing manufactured, for various branches of the military, webbing used to secure cargo, and barrier tape used to prevent military aircraft from overshooting landings on aircraft carriers. The contracts yielded Murdock Webbing government payments of nearly $9,000,000.

The contract terms required Murdock Webbing to perform extensive laboratory testing on the webbing and barrier tape in accordance with federal and military testing standards. Instead of performing all of the required tests, however, Murdock Webbing performed only a few, and fabricated the others. As a result of its submission of false laboratory test results, the corporation was charged with four counts of submitting false statements in violation of 18 U.S.C. § 1001.

■ On February 28, 1985, in the United States District Court for the District of Massachusetts, Murdock Webbing pleaded guilty to all four counts, and was fined $7,500 on each count. Based upon the com-

** Of the United States Court of International Trade, sitting by designation pursuant to 28 U.S.C. § 293(a).

pany's criminal conduct, on May 29, 1985, Murdock Webbing and its officers were proposed for debarment pursuant to the Federal Acquisition Regulation (FAR), codified in 48 C.F.R., chapter 1, which was jointly issued by the Department of Defense (DOD), the General Services Administration (GSA), and the National Aeronautics and Space Administration (NASA). The FAR "[p]rescribes policies and procedures governing the debarment and suspension of contractors by agencies...." 48 C.F.R. 9.400(a)(1). Debarment is an administrative action which excludes nonresponsible contractors from government contracting. The regulation authorizes a debarring official, when it is "in the public interest," to "debar a contractor for any of the causes in 9.406–2, using the procedures in 9.406–3." 48 C.F.R. 9.406–1(a). The causes for debarment of a contractor under FAR 9.406–2 include a conviction for "falsification or destruction of records, [and] making false statements...." 48 C.F.R. 9.406–2(a)(3).

Under FAR 9.406–1 "[t]he debarring official may extend the debarment decision to include any affiliates of the contractor if they are (1) specifically named and (2) given written notice of the proposed debarment and an opportunity to respond...." 48 C.F.R. 9.406–1(b).

FAR 9.406–5(b) further provides:

The fraudulent, criminal, or other seriously improper conduct of a contractor may be imputed to any officer, director, shareholder, partner, employee, or other individual associated with the contractor who *participated in, knew of, or had reason to know of* the contractor's conduct.

48 C.F.R. 9.406–5(b) (emphasis added).

James Caiola, Elsa DeAngelis, and Edward Lodge opposed their proposed debarments, and submitted evidence that none of them had any knowledge of Murdock Webbing's practices of submitting false testing reports to the government. The evidence showed that James Caiola and Edward Lodge were not involved in the manufacturing or production operations of Murdock Webbing. In addition, it was shown that

Elsa DeAngelis was merely a figurehead Secretary of the corporation who in no way participated in the business.

After reviewing all submissions, William Carroll, the DLA's debarring official, concluded that, for the purpose of FAR 9.403, Elsa DeAngelis was an "affiliate" of Murdock Webbing because she was Secretary and a director of the corporation. Carroll also ruled that the criminal conduct of Murdock Webbing should be imputed under FAR 9.406–5(b) to James Caiola and Elsa DeAngelis because, in their capacities as officers and directors, they "had reason to know of the criminal conduct although [they] did not have actual knowledge of the conduct." As to Edward Lodge, however, Carroll tersely declared that "he did not have actual knowledge of the criminal conduct, and had no reason to know of it." Accordingly, Edward Lodge's proposed debarment was terminated on October 18, 1985. Carroll did not endeavor to explain why, in his judgment, James Caiola and Elsa DeAngelis "had reason to know," but Lodge did not.

Seeking to enjoin their debarments and to obtain a declaration that their debarments were contrary to law, James Caiola and Elsa DeAngelis brought this action in the United States District Court for the District of Columbia. The district court denied their motion for summary judgment and granted the government's. Debarment was proper, the district court held, because there was substantial evidence to support the conclusion that "Elsa DeAngelis, as Secretary, and James Caiola, as President were affiliates within the meaning of FAR 9.406–5(b) and had reason to know of the [corporation's] criminal conduct although they did not have actual knowledge of that conduct." *Caiola v. Carroll*, Civ. Action No. 85–3767, slip op. at 7 (D.D.C., Sept. 30, 1986).

The district court agreed with the government's argument that "individual culpability for criminal acts of a business attaches to any person who exercises responsibility in the conduct of the business, whether or not the individual intended to violate the law or knew of the violative

acts." *Caiola v. Carroll,* slip op. at 7. Citing *United States v. Park,* 421 U.S. 658, 95 S.Ct. 1903, 44 L.Ed.2d 489 (1975), the court stated that "[a]ll the government need show is that the individual was in the power or authority to prevent, detect or correct violations." *Caiola v. Carroll,* slip op. at 7. Although the district court stated that there was substantial evidence to support the finding that James Caiola and Elsa DeAngelis had the opportunity, but failed to control Murdock Webbing's testing policy, like DLA debarring officer Carroll, it made no attempt to reconcile the treatment accorded Lodge with that accorded the plaintiffs.

## DISCUSSION

We note at the outset that "[b]ecause an award of summary judgment reflects 'a determination of law rather than fact,' we do not defer to the District Court's conclusions but consider the matter de novo." *Nepera Chem., Inc. v. Sea–Land Serv., Inc.,* 794 F.2d 688, 699 (D.C.Cir.1986) (footnote omitted). The court, therefore, "must examine the record to determine whether any genuine issue of material fact pertinent to the ruling remains, and if not, whether the substantive law was correctly applied." *Western Casualty & Sur. Co. v. National Union Fire Ins. Co.,* 677 F.2d 789, 791 n. 1 (10th Cir.1982). The facts in this case are not in dispute. *Caiola v. Carroll,* Civ. Action No. 85–3767, slip op. at 1 (D.D.C. Sept. 30, 1986). Therefore, we must determine whether the district court correctly applied the substantive law.

The district court stated, altogether properly, that it would "review the whole record of the administrative action and determine whether that action was arbitrary, capricious, and an abuse of discretion not in accordance with law." *See Caiola v. Carroll,* Civ. Action No. 85–3767, slip op. at 6 (D.D.C. Sept. 30, 1986); *see also Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971). While the district court held that the agency's decision was supported by "substantial evidence," we note that the distinction between the "sub-

stantial evidence" standard and the "arbitrary and capricious" standard has been described as "largely semantic." *See Association of Data Processing Serv. Orgs., Inc. v. Board of Governors of the Fed. Reserve Sys.,* 745 F.2d 677, 683–84 (D.C. Cir.1984) ("[W]hen the arbitrary and capricious standard is performing that function of assuring factual support, there is no *substantive* difference between what it requires and what would be required by the substantial evidence test, since it is impossible to conceive of a 'nonarbitrary' factual judgment supported only by evidence that is not substantial in the APA sense....."); *see also* B. Schwartz, *Administrative Law,* § 10.15 at 614 (2d ed. 1984) (quoting *Pell v. Board of Education,* 34 N.Y.2d 222, 231, 356 N.Y.S.2d 833, 313 N.E.2d 321 (1974) ("Rationality is what is reviewed under both the substantial evidence rule and the arbitrary and capricious standard.")).

The court's role, therefore, is to review the whole administrative record to determine whether there was a rational basis for the agency's action.

Debarment is an administrative action used to effectuate the FAR's policy that "[a]gencies shall solicit offers from, award contracts to, and consent to subcontracts with responsible contractors only." *See* 48 C.F.R. 9.402(a). The FAR stresses that debarment is a sanction to "be imposed only in the public interest for the Government's protection and not for purposes of punishment." 48 C.F.R. 9.402(b). Thus, debarment is designed to protect the government by insuring full and open competition by granting awards only to "responsible contractors."

The federal acquisition regulations system operates on the assumption that all individuals with whom the government does business are persons of integrity who abide by the terms of their government contracts. The security of the United States, and thus of the general public, depends upon the quality and reliability of items supplied by these contractors. When items enter the supply system through fraud or deceit, the national security, public

welfare, and personal safety are all potentially compromised and endangered.

Debarment reduces the risk of harm to the system by eliminating the source of the risk, that is, the unethical or incompetent contractor. The Federal Acquisition Regulation sets forth the standards and procedures to be followed by an agency in a debarment action.

In this case, it is undisputed that Murdock Webbing was properly debarred under FAR 9.406–2 for falsification of records. It is also clear that although the corporation was convicted of a crime, its officers were neither charged nor convicted of any offense. The decision of the debarring official, therefore, is governed by FAR 9.406–3(d)(3) which states that:

> In any action in which the proposed debarment is not based upon a conviction or civil judgment, the cause for debarment *must be established by a preponderance of the evidence.*

48 C.F.R. 9.406–3(d)(3) (emphasis added).

"Preponderance of the evidence," as defined in the regulation, means "proof by information that, compared with that opposing it, leads to the conclusion that the fact at issue is more probably true than not." 48 C.F.R. 9.403.

James Caiola and Elsa DeAngelis contend that Carroll's application of the regulations was unreasonable because his finding that they "had reason to know of the criminal conduct although [they] did not have actual knowledge of the conduct" was not supported by a preponderance of the evidence. Appellants submit that Carroll's interpretation of the phrase "reason to know" in FAR 9.406–5(b) was erroneous. *See* Restatement (Second) of Torts, § 12(1) (1965). In addition, they contend that there was no basis for the district court's finding that they were affiliates of Murdock Webbing.

 Since there was no basis for the simultaneous findings that James Caiola and Elsa DeAngelis had "reason to know" of the unlawful conduct while Edward Lodge did not, the agency has acted unreasonably. Furthermore, there was no basis

for the finding of the district court that James Caiola and Elsa DeAngelis were affiliates of Murdock Webbing. Therefore, the decision of the district court is reversed.

A. Reason to Know

It is axiomatic that an agency's interpretation of its own regulations is entitled to considerable deference. *Chevron U.S.A. Inc. v. Natural Resources Defense Council*, 467 U.S. 837, 844, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984). In this case, however, that deference is inappropriate. First, the regulation was written and promulgated not only by DOD, but by GSA and NASA as well. The diffusion of the interpretive authority among several agencies, and the possibility of inconsistent interpretations, weaken the case for deference. Second, the only agency official to construe FAR 9.406–5(b) was Carroll, the DLA's debarring official, *not* the head of the agency. While Carroll's interpretation is, of course, entitled to a "modicum of respect" in this court, we need not accord it dispositive weight. *See AFGE v. FLRA*, 840 F.2d 947, 952 (D.C.Cir.1988). Finally, Carroll's interpretation of the regulation was inconsistent as applied to James Caiola and Elsa DeAngelis on the one hand, and Lodge on the other. The situations of the three officers appear to us to be nearly indistinguishable in the terms of their remoteness from the illegal conduct, yet Lodge alone was spared debarment. Accordingly, we construe the regulations at issue with minimal deference, and are informed by the agency's evident reading of them with respect to Lodge.

The government contends that the district court "properly interpreted the 'reason to know' debarment regulations as administrative devices to protect the public welfare and to impose on government contractors a higher standard of care." In support of its position, the government cites *United States v. Park*, 421 U.S. 658, 95 S.Ct. 1903, 44 L.Ed.2d 489 (1975), in which the Supreme Court upheld the conviction of the president of a corporation on charges of violating the Federal, Food, Drug, and Cosmetic Act (Act). While *Park*

upheld liability, it did not deal with the interpretation of the phrase "reason to know," nor did it involve the unequal treatment of two of three parties in a single proceeding.

The validity of the applicable regulation is not in issue, and it provides for debarment only when the officer has "reason to know" of the misconduct. The evidence in the administrative record, and the decision of the debarring official, indicate an inconsistency in the application of the regulation. Carroll, in his debarment decision, stated that the "information" before him included the following:

> 4. James Caiola, the President of Murdock Webbing and Edward Lodge, the Treasurer, were not involved in the manufacturing and production end of Murdock Webbing and were not aware that the end-item testing had not been done.

> . . . . .

> 6. Elsa J. DeAngelis, the wife of James [sic] A. DeAngelis, was a figure head Secretary of the corporation. She was not involved in the business and had no knowledge that end-item procedures on Government contracts had not been done.

From this evidence the debarring official, Carroll, concluded that James Caiola and Elsa DeAngelis had reason to know of the criminal conduct, but Edward Lodge did not. Carroll's determination does not explain why Lodge, the Treasurer of Murdock Webbing, escaped the treatment meted out to the appellants and the other officers. If a strict liability standard was to be applied, fairness and equal treatment required that it be applied to all officers. It is thus clear that the debarment of James Caiola and Elsa DeAngelis was unreasonable.

### B. Affiliate or Contractor Status

Debarment under FAR 9.406–2, by its terms, applies only to a contractor. The contractor debarred under this regulation for falsification of records and making false statements was the corporation, Murdock Webbing. Debarment, however, may extend "to include any affiliates of the contractor...." 48 C.F.R. 9.406–1(b). The FAR states that:

> Business concerns or individuals are affiliates if, directly or indirectly, (a) either one controls or can control the other or (b) a third controls or can control both.

48 C.F.R. 9.403.

The district court held that there was substantial evidence to support Carroll's finding that James Caiola and Elsa DeAngelis were affiliates of Murdock Webbing. Appellants, however, contend that debarment was improperly extended to them as individuals since neither had or exercised the requisite control over the corporation. We agree with the appellants that the criminal conduct of Murdock Webbing was improperly extended to them.

Carroll, in the decision of debarment, stated clearly that Elsa DeAngelis is an affiliate of Murdock Webbing for purposes of FAR 9.403 by virtue of her position as Secretary and a director of the corporation. However, Carroll made no finding as to the status of James Caiola as an affiliate. The government, although conceding this omission, suggests that Caiola was not debarred as an affiliate, but rather as a contractor. This assertion, however, is without support in the administrative record, and we will not address counsel's post hoc rationalizations. *See SEC v. Chenery Corp.*, 318 U.S. 80, 93–94, 63 S.Ct. 454, 461–62, 87 L.Ed. 626 (1943); *see also Ace Motor Freight, Inc. v. ICC*, 557 F.2d 859, 864 (D.C.Cir.1977).

As for Elsa DeAngelis, the evidence does not support Carroll's finding that she is an affiliate of Murdock Webbing. The control of Murdock Webbing rests clearly with John A. DeAngelis, who holds 9 of its 10 voting shares of stock, the other voting share being held by his son, Don.

The government, citing the Rhode Island case of *Lancellotti v. Lancellotti*, 481 A.2d 7 (R.I.1984), in its brief argues that, Elsa DeAngelis and her husband have an "identity of interest" since "[i]n Rhode Island, where appellant and her husband reside, 'the assets accumulated during the marriage are viewed as belonging to both partners regardless of how title is held.'" The

government also submits that Elsa DeAngelis is "a constructive owner" of her husband's stock under the Internal Revenue Code. Hence, as a "constructive owner" of the shares, with an "identity of interest" in the corporation, she has the potential to control Murdock Webbing, and therefore is an affiliate.

These laws, however, even if correctly stated, were not considered at the administrative hearing, and would not appear to give Elsa DeAngelis a present property interest in her husband's stock sufficient to enable her to exercise any practical control over Murdock Webbing.

Although it may be proper to presume or infer control from one's title as an officer or director of a closely held corporation, the presumption or inference of control must yield to the evidence of the particular case. On the record presented in this case, a presumption or inference of control would be unwarranted as to James Caiola or Elsa DeAngelis. Therefore, it was unreasonable to extend or impute Murdock Webbing's criminal conduct to James Caiola and Elsa DeAngelis.

### CONCLUSION

If the court were to direct the district court to remand the case, the DLA would face the formidable task of reconciling its treatment of James Caiola and Elsa DeAngelis with its treatment of Lodge. The DLA cannot now attempt to reconcile by entering a debarment order against Lodge, and we can conceive of no fair or sensible solution to the case that does not treat these three officers equally.

Although the debarments of appellants expired on May 29, the prospect of a lingering stigma or other adverse impact appears to keep this case vital. *See Super Tire Eng'g Co. v. McCorkle*, 416 U.S. 115, 122, 94 S.Ct. 1694, 1698, 40 L.Ed.2d 1 (1974); *Doe v. Harris*, 696 F.2d 109, 113 (D.C.Cir. 1982); *see also* 48 C.F.R. 552.209–71(a), (c), 552.209(72) (requiring the offeror of solicitations for supplies, services and leases of real property to certify whether "any of its officers and principal employees" have been "debarred or suspended from the award of a public contract," and further noting: (1) "the certification will be considered in connection with the determination of an offeror's responsibility," and (2) "[t]he certification regarding previous crimes, debarments, suspensions, and defaults ... is a material representation of fact upon which the Government relies when making award"). Accordingly, we reject appellees' suggestion of mootness, filed June 13, 1988, and remand the matter to the district court with instructions to set aside the orders debarring plaintiffs.

*Reversed and remanded.*