**CHAS. KURZ & CO., INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**Court No. 86–04–00428.**

United States Court of
International Trade.

Oct. 13, 1988.

Kirkland & Ellis (David G. Norrell, at oral argument and on the brief, Glenn Summers, Katherine C. Zeitlin, Robert C. Sexton, Washington, D.C., on the briefs), for plaintiff.

John R. Bolton, Asst. Atty. Gen., Washington, D.C., Joseph I. Liebman, Attorney in Charge, Intern. Trade Field Office, New York City, (James A. Curley, Washington, D.C., at oral argument and on the brief), for defendant.

RE, Chief Judge:

Plaintiff, Chas. Kurz & Co., Inc. (Kurz), seeks to recover duties paid to the United States pursuant to 19 U.S.C. § 1466(a) (1982) for ship repairs performed in a foreign country on the S.S. *Spirit of Liberty*, a United States flag vessel.

Kurz contends that Section 214(c)(3)(B) of the Trade and Tariff Act of 1984, which amended 19 U.S.C. § 1466(e) (1984 Amendment), entitles it to remission of the duties that it paid for the ship repairs. The amendment provides for the retroactive remission of duties "[u]pon request therefor ..." filed within 90 days of the amendment's enactment. According to Kurz, since it had a petition for review pending during the 90–day statutory period, that petition constituted a legally sufficient "request" for retroactive application of the statute. Kurz also offers several contemporaneous decisions by the Customs Service in support of its claim for remission of the duties paid.

Customs contends that a "request," to be effective, must specifically seek relief under either the superseded "special purpose" exemption, or the 1984 Amendment. According to Customs, Kurz relied on neither ground, and, therefore, cannot claim that it stands on equal footing with other petitioners who sought remission based on the old "special purpose" provision in 19 U.S.C. § 1466(e).

It is clear that the conclusion by Customs that the petition was legally insufficient to invoke the retroactivity provision of the 1984 Amendment does not dispute, either directly or inferentially, Kurz' main factual contentions that (1) it petitioned the Carrier Rulings Branch for remission of duties based on its belief that the Military Sealift Command (MSC) should be billed for the duties; (2) that it did not cite section 1466(d) in its petition, and that it did not limit its petition for relief under that subsection; or (3) that the Carrier Rulings Branch did not characterize Kurz' petition as arising under section 1466(e), and, there-

fore, did not apply the 1984 Amendment to its petition. The question presented on these cross-motions for summary judgment, therefore, is whether plaintiff made an effective "request" entitling it to the benefit of the 1984 Amendment.

■ It is the holding of the court that there are no genuine issues of material fact, and that, as a matter of law, Kurz did not file an effective "request" during the 90–day statutory period. Furthermore, since the cases cited by Kurz are distinguishable, Customs did not act in a discriminatory manner in denying it the benefit of the 1984 Amendment. Consequently, plaintiff's motion for summary judgment is denied, and defendant's cross-motion is granted.

In this case, duties were assessed under 19 U.S.C. § 1466(a) which imposes a 50 percent *ad valorem* duty on all foreign repairs performed on United States vessels. *See Suwannee Steamship Co. v. United States,* 79 Cust.Ct. 19, 21, C.D. 4708, 435 F.Supp. 389, 390 (1977). At the time that Customs assessed the duties, section 1466(e) exempted from the foreign ship repair duty designated "special purpose vessels" not primarily engaged in the transport of either passengers or property. The 1984 Amendment to section 1466(e), which became effective on November 14, 1984, abolished the 50 percent foreign repair duty on any vessel "that arrives in a port of the United States two years or more after its last departure from a port in the United States ..." 19 U.S.C. § 1466(e) (Supp. IV 1986).

Section 214(c)(3)(B) of the Trade and Tariff Act of 1984, which amended section 1466(e), made the exemption from foreign repair duties retroactive in certain instances. This section, in pertinent part, provides as follows:

(B) Upon request therefor filed with the customs officer concerned on or before the 90th day after the date of the enactment of this Act [Oct. 30, 1984], any entry in connection with the arrival of a vessel used primarily for transporting passengers or property—

(i) made before the 15th day [i.e., the 15th day after the date of the enactment of this act—November 14, 1984] but not liquidated as of January 1, 1983 ...

shall, notwithstanding the provisions of section 514 of the Tariff Act of 1930 (19 U.S.C. § 1514) or any other provision of law, be liquidated or reliquidated as though such entry had been made on the 15th day [i.e., November 14, 1984].

Trade & Tariff Act of 1984, Pub.L. No. 98–573, § 214, 98 Stat. 2948, 2988–89, *reprinted in a footnote to* 19 U.S.C. § 1304 (Supp. IV 1986).

The S.S. *Spirit of Liberty* sailed from the United States in April 1981, under charter to the MSC of the United States Navy. The vessel was operated by Keystone Shipping Company (Keystone), a wholly owned subsidiary of Kurz. In April and May 1982, the *Spirit of Liberty* underwent a biennial overhaul in Singapore costing $841,952. MSC had requested that the overhaul be performed in Singapore.

In August 1983, the *Spirit of Liberty* returned to the United States, arriving at Norfolk, Virginia where Keystone filed a vessel repair entry report. Pursuant to 19 U.S.C. § 1466(a), the Customs Unit imposed a 50 percent *ad valorem* duty on the foreign repairs.

Keystone filed an application for remission of the duty, stating that, as it understood Customs policy, foreign repair duties to MSC-chartered vessels were to be billed directly to the MSC. Keystone also objected that some of the repair work was non-dutiable. The Customs Unit denied the application as to the most of the expenses, but acknowledged that some specific charges were non-dutiable. The present action seeks to recover duties paid on charges that have not been remitted.

In July 1984, Keystone petitioned the Customs Unit for review of the decision which denied remission of the duty. Again, Keystone's only argument was that MSC should be billed for the foreign repair duty. On October 16, 1984, the Customs Unit requested that the Carrier Rulings Branch rule definitively on this issue.

While Keystone's petition for review was pending, Congress enacted the 1984 Amendment to section 1466(e). Under the terms of this amendment, subject to conditions not at issue here, all ships which entered the United States more than two years after its last departure and arrived on or after November 14, 1984, are exempt from foreign repair duty. The 1984 Amendment also provides for retroactive remission of duties for ships which entered the United States before November 14, 1984, and remained unliquidated as of January 1, 1983.

The *Spirit of Liberty* arrived in the United States more than two years after its last departure, and the repair entry for the ship was filed on August 19, 1983, thus, before November 14, 1984, and the entry had not been liquidated until May 17, 1985, i.e., after January 1, 1983. Hence, the ship qualified for the remission of foreign repair duties under the retroactivity provision of the 1984 Amendment. The legal issue presented is whether the ship's owners made a valid and timely "request" for the application of the retroactive remission of the duties paid.

Stating that "the fact that a vessel is time chartered to MSC does not constitute a basis for remitting the duty on foreign repairs," in April 1985, the Carrier Rulings Branch denied Keystone's petition for relief. *See* Priv.Ltr.Rul. 107102 (Apr. 8, 1985). The Customs Unit forwarded that decision to Keystone and, soon thereafter, liquidated Keystone's entry.

Keystone filed a timely protest maintaining that it was entitled to a remission under the liberalized exemption of the 1984 Amendment because its petition for relief had been pending during the entire 90–day retroactive request period. In September 1985, the Carrier Rulings Branch denied the protest for the following reasons:

Since the subject vessel was used primarily for transporting passengers or property, it was incumbent upon the protestant to request retroactive application within 90 days of October 30, 1984. The fact that a petition was pending before Customs during the 90 day period did not preclude the protestant from requesting retroactive application of section 208 of the Act to the subject entry. Since a request for retroactive application was not made within the time period allowed by the statute, the protest should be denied.

Priv.Ltr.Rul. 107868 (Sept. 12, 1985). Kurz paid the liquidated duty of $441,745.71, plus interest of $40,395.64, which is the amount that Kurz is now seeking to recover.

Contending that there are no material issues of fact in dispute, both parties move for summary judgment pursuant to Rule 56(d) of the Rules of the United States Court of International Trade.

"In ruling on cross-motions for summary judgment, the court must determine if there exist any genuine issues of material fact and, if there are none, decide whether either party has demonstrated its entitlement to judgment as a matter of law." *American Motorists Ins. Co. v. United States*, 5 CIT 33, 36 (1983). It is axiomatic that a motion for summary judgment must be denied if there is a genuine dispute about a material fact. *See Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

All relevant facts surrounding Kurz' petition are undisputed. Hence, the sole question presented is whether a petition which does not specifically seek relief under either the superseded "special purpose vessel" exemption, or the 1984 Amendment, satisfies the requirements of a "request" for purposes of retroactive application of the 1984 Amendment. Clearly, therefore, the question presented, whether the Kurz' petition satisfied the "request" requirement, is not a question of fact, but a question of law.

Kurz contends that when an application had already been filed, and entry was open and under active consideration by Customs, no additional request was necessary. Consequently, Kurz asserts that its pending application for remission of duties was a sufficient request to meet the "upon request therefor" requirement of the statute. Furthermore, Kurz maintains that, inde-

pendent of the type of notice generally required, Customs and its personnel had the information necessary to apply the 1984 Amendment.

Customs agrees that no additional request is required as long as the vessel owner's original request was sufficient. However, it contends that the 1984 Amendment's "[u]pon request therefor" language requires a vessel owner either to have petitioned for a "special purpose vessel" exemption, or expressly to request the application of the 1984 Amendment. Therefore, since Kurz' only basis for seeking remission, within the 90–day period that the retroactivity provision was in effect, was that it believed the MSC would or should pay the duty, Customs contends that Kurz' request cannot serve as notice that the vessel should be exempted from duty.

A vessel owner has 60 days after the vessel's arrival in a United States port to file an application for remission of customs duties. 19 C.F.R. § 4.14(d)(ii) (1988). The regulation for remission provides that "[t]he application for relief need not be in any particular form." *Id.* § 4.14(d)(1). A vessel owner dissatisfied with the initial decision on its application may file a petition for review of that decision. *Id.* § 4.14(d)(2). Petitioner, however, is required to "identify the decision on the application for relief and must detail the exceptions taken to that decision." *Id.*

On July 2, 1984, Kurz, in its petition for review, objected to the original determination based upon its understanding of Customs' policy that foreign repair duties were to be billed to MSC. This was the same objection Kurz raised in its original application for remission of duties in September 1983. Thus, nowhere in these requests for remission did Kurz claim that section 1466(e) was applicable. The first time that Kurz stated or claimed that the vessel was exempt by virtue of the 1984 Amendment to section 1466(e) was in June 1985, long after the 90 day period established by Congress for the filing of requests for the retroactive application of the amendment.

The court does not agree with the contention that the mere pendency of a petition, regardless of its content, determines the applicability of the 1984 Amendment. The amendment's application is determined by the specific reference in the petition for remission or relief under section 1466(e). As the Customs Rulings Branch stated in denying Kurz' petition for remission, "the fact that a petition was pending ... during the 90 day period did not preclude protestant from requesting retroactive application ... of the Act to the subject entry." Hence, although an additional request was not necessary in all cases, a request was necessary in those cases in which the petitioner, as here, had not advised Customs that 19 U.S.C. § 1466(e) was the basis upon which it was seeking a remission of duties. Had Kurz' pending petition indicated that section 1466(e) was the basis for the request, there would have been no need for an additional request.

It is true that Kurz' petition never cited 19 U.S.C. § 1466(d), and that Customs interpreted Kurz' petition as seeking relief under this section *sua sponte.* Nevertheless, it was clear that Kurz' pending petition relied solely on its belief that foreign repair duties were to be billed directly to the MSC for MSC-chartered vessels. Kurz did not cite any specific statutory subsection, and, therefore, Customs states that it had to "guess." Although Kurz may now say that Customs was mistaken in applying section 1466(d) it was entirely reasonable for Customs, from the contents of the petition, to assume that section 1466(d) was the basis for Kurz' contention that the duties were to have been billed directly to MSC. Hence, Kurz is not excused from its failure to give Customs timely notice of "any exceptions" to the duty to be paid. As stated in *PPG Industries v. United States,* 4 CIT 143 (1982) "[c]learly, the Congress did not intend to impose upon Customs ... an obligation to ferret out information" from a petitioner seeking remission of duties. *See Id.* at 148.

Although not specifically applicable and, therefore, only persuasive, decisions involving protests of Customs classifications are illustrative of the information Customs should receive. The Supreme Court has

set forth the requirements of a protest in the following language:

> [t]echnical precision is not required [of a protest]; *but the objections must be so distinct and specific,* as, when fairly construed, to show that the objection ... was at the time in the mind of the importer, and that it was sufficient *to notify the collector* of its true nature and character, to the end *that he might ascertain the precise facts, and have an opportunity to correct the mistake* and cure the defect....

*Davies v. Arthur,* 96 U.S. 148, 151, 24 L.Ed. 758 (1878) (emphasis added); *see also Po–Chien, Inc. v. United States,* 3 CIT 17, 18–19 (1982) (quoting *The George C. Whitney Co. v. United States,* 16 Ct.Cust.Appls. 301, 303, T.D. 42874 (1928) ("[s]trict rules of construction are not applicable to protests and it is sufficient if the importer indicates distinctly and definitely the sources of his complaint *and his desire to make it a foundation of a claim against the government.*") (emphasis added)). Kurz' pending petition, however liberally construed, does not advise Customs of its intent to assert section 1466(e) as a basis for the remission of the duties that had been imposed.

Kurz also contends that there was no need to refer to section 1466(e) or, in an additional request, to the 1984 Amendment because the record demonstrates that Customs had actual notice of Kurz' entitlement to remission of duties under the 1984 Amendment.

It is not denied that, in some circumstances, formal notice is not required if there is actual notice. *See Heraeus–Amersil, Inc. v. United States,* 795 F.2d 1575, 1583 (Fed.Cir.1986), *cert. denied,* 479 U.S. 1064, 107 S.Ct. 949, 93 L.Ed.2d 998 (1987). The question, of course, is to determine whether, in the particular case, there has been "actual notice." The Customs Bulletin states that "[a] person can be said to have actual notice when the information is communicated to that person in a way that the person's mind can and does take cognizance of that information." 18 Cust.Bull. 887, 890, C.S.D. 84–28 (1984).

Here, however, Kurz' original application for remission and its petition did not apprise Customs officers that relief was sought under either the "special purpose vessel" exemption or the 1984 Amendment. Kurz' petition clearly and simply objected to the fact that MSC was not billed directly for the duty. If Kurz' petition had been grounded on a claim of "special purpose vessel" status, Kurz would not, in all likelihood, have sought to have MSC billed for the duty. Rather, Kurz would have contested the payment of any foreign repair duty at all. Although the petition referred to the MSC-charter, and might have contained sufficient facts for a Customs officer possibly to have concluded that the *Spirit of Liberty* was a "special purpose vessel," it did not expressly seek an exemption on that ground. Furthermore, since the petition was filed almost four months before Congress enacted the 1984 Amendment, it could not possibly have apprised a Customs officer of Kurz' intent to seek relief under the 1984 Amendment.

Kurz contends that the Government's view or interpretation of the "upon request therefor" language in the statute is too restrictive. Kurz submits that the language of the statute was intended to be liberally interpreted. According to Kurz, the legislative history of the 1984 Amendment indicates that it was designed to lower operating costs and enhance the competitiveness of United States flag vessels. It adds that, since the *Spirit of Liberty's* operating costs would be lowered by the remission of the duties, Congress did not intend the request requirement to be an "artificial barrier."

Pursuant to all authority, in this particular area this court has stated that it "must interpret a statute in a manner that will carry out or effectuate the congressional intent". *Elizabeth River Terminals, Inc. v. United States,* 1 CIT 165, 172, 509 F.Supp. 517, 522 (1981). The primary source for the discovery of legislative intent, however, is the statute itself. *Andrus v. Allard,* 444 U.S. 51, 56, 100 S.Ct. 318, 322, 62 L.Ed.2d 210 (1979).

A careful reading of the statute as well as an examination of the legislative history of the 1984 Amendment does not reveal how the Congressional intent or purpose would be thwarted by denying a retroactive exemption to a vessel which failed to file a "request" within the 90–day period. The statute itself indicates that, by limiting the 1984 Amendment's exemption to vessels not liquidated as of January 1, 1983, and by conditioning that exemption on the filing of a "request," Congress intended to temper or qualify the prospective goal of assisting the American maritime industry.

It has been stated, "that where great inconvenience will result from a particular construction, that construction is to be avoided, *unless the meaning of the legislature be plain; in which case it must be obeyed.*" *SCM Corp. v. United States,* 80 Cust.Ct. 226, 243, C.R.D. 78–2, 450 F.Supp. 1178, 1190 (1978) (quoting *United States v. Fisher,* 6 U.S. (2 Cranch) 358, 386, 2 L.Ed. 304 (1805) (emphasis added)). The plain language of the 1984 Amendment itself, however, specifically requires a "request" in order to set in motion the retroactive application of the exemption. Moreover, the legislative history of the amendment explicitly states "that proper notifications" are to be made. H.R.Rep. No. 1015, 98th Cong., 2d Sess. 65, *reprinted in* 1984 U.S. Code Cong. & Admin.News 4910, 4960, 5024. Denial of the retroactive exemption to a vessel which failed to file a request for the benefit conferred would not, therefore, contravene the intent of Congress as reflected in the statute and its legislative history. *See Swan & Finch Co. v. United States,* 190 U.S. 143, 146, 23 S.Ct. 702, 703, 47 L.Ed. 984 (1903) ("benefit is to be construed in favor of the government"). In sum, Customs was not required to grant a petition which did not comply with the statute.

In addition, Kurz contends that three contemporaneous decisions by the Customs Service show that the application of the 1984 Amendment does not require an additional, special notice in cases in which a petition is pending. A close examination of the decisions cited, however, reveals that those cases are factually distinguishable.

In the three decisions upon which Kurz relies, each petitioner sought exemption from duty as a "special purpose vessel." The language in the decisions makes it clear that no additional request was necessary *"if a request for 'special purpose vessel' classification* of a vessel which arrived in the United States prior to the effective date of the Act *was filed with Customs* and not resolved as of October 30, 1984."  Priv.Ltr.Rul. 106890 (Nov. 20, 1984); Priv.Ltr.Rul. 107146 (Nov. 13, 1984) (emphasis added); *see also* Priv.Ltr.Rul. 107138 (Jan. 24, 1985).

In this case, it is not questioned that Kurz, in its petition, referred to the MSC charter, but did not seek "special purpose vessel" classification. Hence, the Kurz petition and circumstances are clearly distinguishable from the cases cited.

Kurz' desire to have MSC billed for the foreign repair duty may have indicated to the reviewing Customs officer that Kurz itself did not believe that it was entitled to "special purpose vessel" classification. Hence, Kurz was not "similarly situated" as the other petitioners, and the requirement for a "request" for the application of the 1984 Amendment was neither arbitrary nor discriminatory. On the facts presented Kurz cannot show that it was treated differently from others similarly situated. *See Caiola v. Carroll,* 851 F.2d 395, 399, 400 (D.C.Cir.1988). Indeed, the same may be said of the temporary duty suspension for tuna purse seine vessels in order to effect the intent of an Act of Congress passed in December, 1980. *See United States v. Mills & Gibb,* 8 Ct.Cust.Appls. 422, 426, T.D. 37667 (1918).

■ Finally, Kurz challenges the administrative action taken by asserting an equitable estoppel based on Customs' delay in rendering a decision on its July 1984 petition for review. A delay, however, in rendering a decision on Kurz' pending petition did not preclude Kurz from filing a "request" for remission of duties under the 1984 Amendment. On this record, Kurz has "failed to provide evidence of affirmative Government misconduct that would

support an estoppel." *Hanson v. United States*, No. 88–1147, slip op. at 4 (Fed.Cir. Sept. 23, 1988 [861 F.2d 728 (table) ] ).

At oral argument, in a vigorous and helpful presentation, counsel for Kurz stressed the unfortunate result in this case. Although the result may be harsh and could have been avoided, Kurz cannot be heard to complain that Customs failed to apply the proper statutory provision when Kurz itself did not indicate which provision was applicable. As stated elsewhere, "this is not a case in which a citizen can claim to have been deprived of fundamental decency and good faith in its dealings with the Government." *Hanson*, slip op. at 6.

After a careful consideration of the pleadings and affidavits submitted, the court holds that a petition which does not specifically seek remission of foreign repair duties under either the "special purpose vessel" exemption, or the 1984 Amendment, does not satisfy the requirements of a "request" under the terms of the amended statute. Therefore, plaintiff's motion for summary judgment is denied, and defendant's cross-motion for summary judgment is granted.