Carroll P. **KISSER**, Plaintiff,

v.

Jack **KEMP**, et al., Defendants.

Civ. A. No. 91–2380.

United States District Court,
District of Columbia.

Feb. 18, 1992.

Steven D. Gordon, Michael H. Ditton, Washington, D.C., for plaintiff.

Jeffrey T. Sprung, Asst. U.S. Atty., Washington, D.C., for defendants.

### MEMORANDUM

GESELL, District Judge.

Plaintiff, Mr. Kisser, a former employee of DeFranceaux Group, Inc. ("DRG"), a company that co-insured loans made for projects sponsored by the Department of Housing and Urban Development ("HUD"), has been prevented from participating in primary and lower tier covered transactions "throughout the executive branch of the Federal Government" since March 22, 1989. *See* 24 C.F.R. §§ 24.200(a), 24.110. Initially, he was suspended by HUD under 24 C.F.R. § 24.400 *et seq.;* and subsequently, on December 2, 1991, he was debarred under 24 C.F.R. § 24.300 *et seq.* for three

years, ending March 22, 1992, after being given credit for the time he was suspended.

Mr. Kisser alleges that the suspension and debarment decisions of the Secretary, by his designee Ms. Dudley, were each improper under the Administrative Procedure Act ("APA"), 5 U.S.C. § 551 *et seq.*, and the Due Process Clause of the Constitution. His persistent efforts throughout this process to obtain preliminary relief have been unsuccessful. The issues are now before the Court on cross-motions for summary judgment, which have been thoroughly briefed and fully argued. There are no material issues of fact in dispute.

### Background

In January 1988, Mr. Kisser was employed as executive vice president of DRG, a company that was responsible for a large number of coinsured loans on HUD projects. Each month, DRG collected mortgage payments from property owners and credited the collections to the holders of securities pledged to guarantee the mortgages. If a property owner failed to make its monthly payment, DRG, as a HUD coinsured lender, was responsible for meeting the monthly payment to the security holders out of its own funds.

During 1988, a dispute developed between DRG and Government National Mortgage Association ("GNMA"), an instrumentality of HUD, concerning the proper treatment of foreclosure sale proceeds received by DRG on properties in its HUD loan portfolio. GNMA insisted that those proceeds should be passed through to the security holders in the month following receipt, pursuant to section 2.05 of the Guaranty Agreement, and DRG contended under the same section that the funds did not need to be passed through until the month following receipt of a final insurance claim settlement from HUD.[1] As a result, GNMA defaulted DRG as an approved lender in July 1988. Thereafter, DRG did comply and was reinstated, but in September 1988, DRG was unable to meet its pass-through obligations and was again defaulted.[2]

Pending completion of an investigation that HUD subsequently initiated regarding DRG, HUD on March 22, 1989, suspended DRG and related business entities, as well as sixteen individuals—including Mr. Kisser—virtually all of whom were high-ranking employees of DRG. Following the suspensions, Mr. Kisser, like most of the individuals, resigned his position with DRG. Unlike other individuals, however, Mr. Kisser entered into a nonexclusive consulting agreement with DRG the day after his resignation. Consequently, although HUD later lifted the suspensions of the remaining individuals who had left DRG, it did not lift Mr. Kisser's suspension, claiming he remained an "affiliate" of DRG.

Mr. Kisser challenged his suspension, on the ground that he was not an "affiliate" of DRG for purposes of the applicable regulation. *See* 24 C.F.R. § 24.105(b). The

---

1. Section 2.05 of the Guaranty Agreement reads as follows:

   Regular monthly installments shall be adjusted from time to time to include unscheduled recoveries of principal, including partial prepayments, prepayments in full, and partial and final claim settlements of mortgage insurance benefits. The Issuer shall further adjust regular monthly installments, from its own funds, to provide the holder with any principal that remains unrecovered after the assignment of the mortgage to the Secretary of Housing and Urban Development after the withdrawal from the pool of a defective loan, or after any other liquidation or other disposition of the mortgage, such further adjustments to be made no later than in the month following the month in which a final claim settlement is received, or other

final disposition of the claim is made by the insuring agency with respect to the Insurer. For purposes of this section, adjustments from the Insurer's own funds shall also be deemed to constitute unscheduled recoveries of principal.
   While the meaning of this provision remains contested, the Court needs not reach the appropriate interpretation of the section in regard to the proper handling of foreclosure sale proceeds.

2. When property owners defaulted entirely on their loans, DRG could eventually recoup from HUD the money DRG was required to pay to the security holders, but the reimbursement from HUD covered only part of DRG's costs and was sometimes long delayed. Thus, the defaults often imposed economic hardship on the co-insurers.

administrative law judge, ALJ Heifetz, agreed, and lifted the suspension, but counsel for HUD sought discretionary review of the decision, and the Secretary's designee, Ms. Dudley, reversed the ALJ, on August 4, 1989.

Although a suspension generally may not last beyond twelve months, HUD extended the suspension an additional six months, to the maximum time possible, before initiating formal debarment proceedings on September 23, 1990. *See* 24 C.F.R. § 24.400(d), 24.415(b). Those debarment proceedings had the effect of continuing Mr. Kisser's suspension still longer. After an evidentiary hearing that lasted from April 8–16, 1991, another ALJ, ALJ Cooper, found for Mr. Kisser and held him responsible and qualified to participate in government nonprocurement programs.

Again counsel for HUD sought discretionary review by the Secretary, pending which HUD summarily ruled that Mr. Kisser remained suspended, despite the decision of the ALJ. Finally, on December 2, 1991, more than two and a half years after the initial suspension, the Secretary's designee, Ms. Dudley, issued HUD's final ruling on the matter. Ms. Dudley again reversed the ALJ, and imposed debarment on Mr. Kisser for a period of three years, with credit for time served. Mr. Kisser's debarment ends March 22, 1992.

### *The Initial Suspension*

■ The Court reviews HUD's actions— in regard to the initial suspension, as well as the final debarment—under the traditional "arbitrary or capricious" standard set forth in the APA. *See* 5 U.S.C. § 706(2).[3] Though the first suspension has long since expired, issues relating to it are not moot because the agency's findings continue to stigmatize plaintiff, *see Caiola v. Carroll*, 851 F.2d 395, 401 (D.C.Cir. 1988)—particularly in light of the fact that plaintiff was one of the few former DRG employees singled out to have his suspension continued after his resignation from DRG.

Based on the administrative record before the Court, HUD's manner of proceeding against plaintiff in regard to the first suspension is indeed perplexing. HUD originally suspended sixteen high-ranking members of DRG—including Mr. Kisser— for being "affiliates" of DRG, pursuant to 24 C.F.R. § 24.105(b). That section defines "affiliates" as follows:

Persons are affiliates of each another [sic] if, directly or indirectly, either one controls or has the power to control the other, *or*, a third person controls or has the power to control both. Indicia of control include, but are not limited to: interlocking management or ownership, identity of interests among family members, shared facilities and equipment, common use of employees, or a business entity organized following the suspension or debarment of a person which has the same or similar management, ownership, or principal employees as the suspended, debarred, ineligible, or voluntarily excluded person.

HUD's decision to proceed under the "affiliate" section is highly questionable when one realizes that other regulations more obviously applicable in this situation specifically allow the agency to impute the acts of a debarred or suspended organization like DRG to "any officer, director, shareholder, partner, employee, or other individual associated with the participant who participated in, knew of, or had reason to know of the participant's conduct." *See* 24 C.F.R. §§ 24.325(b)(2), 24.420. Clearly, it would have more appropriate to proceed against the sixteen individuals under the "imputation" section for their acts and knowledge leading up to the time that DRG was suspended by HUD.

HUD's decision to suspend the sixteen individuals as affiliates was apparently the easiest course. Under the "affiliate" section of the regulations, all that the agency needs prove is that an individual was an affiliate, namely, that there existed the requisite "control" relationship between the individual and the suspended company. No

---

**3.** Plaintiff also asserts that HUD's actions violated the Due Process Clause of the Constitution, but the Court does not need to reach plaintiff's constitutional claims.

actual proof of wrongdoing on the part of the individual is required. In fact, if the company does not challenge its suspension, HUD does not have to prove that there was any wrongdoing at all. In contrast, to have proceeded under the "imputation" section, HUD would have actually had to prove, first, that DRG's conduct was itself improper and deserving of suspension, and second, that the individuals suspended "participated in, knew of, or had reason to know of" DRG's wrongful conduct.

By suspending the individuals as affiliates, the agency tried to take the short-cut of suspending them without going through the bother of proving that there had been any wrongdoing by DRG or the officers. HUD obviously wanted to force the individuals to resign from DRG immediately, before any type of proceeding had been concluded. As soon as the individuals severed their formal ties with DRG, HUD lifted their suspensions.

Mr. Kisser also left DRG, but the day after he resigned, he entered into a contract with DRG as an independent consultant. As a result, HUD continued to treat him as an affiliate and did not lift his suspension. The decision by HUD not to lift Mr. Kisser's suspension raises two questions: first, was it a valid exercise of agency discretion to proceed with suspension proceedings against Mr. Kisser but not against the others; and second, was Mr. Kisser in fact an affiliate of DRG as defined by the regulations? Because the validity of the initial suspension can be resolved on the second question alone, the Court will defer its discussion of the first question until that issue again becomes relevant in relation to the final debarment proceeding.

■ Mr. Kisser was not shown to be an affiliate of DRG after he resigned from DRG.[4] ALJ Heifetz, who heard evidence on the question, concluded that HUD had not demonstrated that the independent contractor arrangement between Mr. Kisser and DRG was anything other than what it

purported to be. Nonetheless, Ms. Dudley, the Secretary's designee, reversed the ALJ's decision on the ground that the proximity in time between Mr. Kisser's resignation and his appointment as a consultant was sufficient to indicate that the arrangement was a sham and that Mr. Kisser in fact remained in his same position with DRG. Ms. Dudley pointed out that Mr. Kisser had "failed to show that there is any legitimate of [sic] bonifide [sic] purpose for [his] actions and that [he], in fact, did not control the entire transaction." Dudley Suspension Determination, Complaint Ex. 8, at 2.

In reaching her decision, Ms. Dudley pointed to no evidence other than her own conclusion that the resignation and appointment of Mr. Kisser as consultant actually constituted "in effect a single transaction." *Id.* at 3. There was no such evidence in the record that she could have pointed to. HUD itself had recognized that no such evidence was yet in the record, and thus, in its petition for secretarial review, asked only that "the case be remanded for an evidentiary hearing with an opportunity for discovery and for proper application of the affiliate test." Pet. for Secretarial Review, Complaint Ex. 7, at 2. In holding that Mr. Kisser had failed to show any legitimate purpose for the consulting arrangement, Ms. Dudley switched the burden of proof onto Mr. Kisser, even though the applicable regulation provides that the burden should be on the agency. *See* 24 C.F.R. §§ 24.413, 24.313(b)(4). Ms. Dudley, therefore, not only ignored the record before her and asserted her conclusions without evidentiary support, but she also violated the express command of the regulation by putting the burden on Mr. Kisser. Mr. Kisser presented his consulting contract, which Ms. Dudley indicated—and as is clear from the paper itself—is a facially valid contract without any of the indicia of control set forth in the regulation's definition of "affiliate," while the government presented no evidence indicating a different relationship

---

**4.** It was never alleged by HUD as a reason for Mr. Kisser's suspension that Mr. Kisser had done anything wrong during the time that he was employed as DRG's executive vice president. His suspension was based solely on his affiliation with the company after he resigned.

between Mr. Kisser and DRG. *See* Heifetz Determination, Complaint Ex. 6, at 2–3. As a result, Ms. Dudley's suspension determination and the resulting suspension are arbitrary and capricious, and must be vacated.

### The Debarment

In the subsequent debarment proceeding, HUD elected to attack Mr. Kisser on an entirely different theory from its prior claim that he deserved sanction for remaining an affiliate after the suspension of DRG. This second action focused instead on Mr. Kisser's actions as executive vice president of DRG, while the company was still a certified HUD co-insurer. The written decisions of both ALJ Cooper and Ms. Dudley—as well as the motions papers currently before the Court—relating to the debarment concentrated on the propriety of DRG's actions in regard to the pass-through requirements set forth in section 2.05 of the standard Guaranty Agreement. *See supra* note 1. However, a more troubling question is raised by the decision of HUD to institute debarment proceedings in the first place against Mr. Kisser, and not to do so against the other DRG officers.

■ The only reason contained in the administrative record for the agency's decision to proceed with debarment against Mr. Kisser, as opposed to anyone else, is that he entered into the consulting arrangement with DRG, described above. But his relationship with DRG after the company had been suspended has nothing to do with his knowledge or participation in improper activities while he was executive vice president. *See* 24 C.F.R. § 24.325(b)(2). Moreover, as the Court has stated, there were insufficient grounds for the original suspension. *See supra.* Thus, the Court is left with a situation in which HUD preliminarily found that sixteen individuals, at least some of whom had high-level employment ties to DRG, ought to be suspended temporarily; but then the agency apparently decided to continue the suspension of and debar Mr. Kisser—without any explanation as to why he, and possibly a few others, were in any different position with respect to DRG during the time before DRG's suspension than any of the individuals who were not suspended or debarred.

This Circuit has clearly held that, in a situation in which several individual officers of a suspended corporation are all facially susceptible to debarment, the agency must provide a reasoned explanation for its decision to debar only certain of them. Failure to do so constitutes unreasonable, arbitrary and capricious action on the part of the agency. *See Caiola*, 851 F.2d at 399. Given the lack of any such explanation in this case, the Court is left with the impression that HUD proceeded against Mr. Kisser simply because he had rubbed someone at the agency the wrong way, as some facts submitted strongly suggest. But that would not be a sufficient explanation—even if it had been given. Debarment is a serious matter, both for the government, which must be able to debar dishonest or malfeasant contractors, and for the individual, whose primary source of income might be terminated by debarment. The regulations and the courts insist that agencies proceed carefully in such matters and that they fully explain their decisions. Here that was not done. No sense of a fair hearing or fair play emerges from the record. As a result, Mr. Kisser's debarment must be vacated.[5] Remand would be inappropriate because any attempt now by the agency to distinguish Mr. Kisser from the other DRG employees would simply be a post-hoc rationalization. *See id.* at 401.

An appropriate Order accompanies this Memorandum.

### ORDER

For the reasons stated in the accompanying Memorandum, after full briefing and oral argument from all parties, it is hereby

---

5. Plaintiff has also challenged the agency's summary decision to leave him on suspension even after ALJ Cooper had ruled in his favor and ordered his suspension to terminate. Because that suspension was not imposed pursuant to a hearing that could in any way stigmatize plaintiff and because that suspension ended on December 2, 1991, when the agency's final determination was issued, the matter is moot.

ORDERED that defendants' motion for summary judgment is denied; and it is further

ORDERED that plaintiff's motion for summary judgment is granted; and it is further

ORDERED that plaintiff's suspension and debarment are vacated; and it is further

ORDERED that plaintiff's second motion for preliminary injunction is denied as moot.