**Joseph SILVERMAN, an individual, et al., Plaintiffs,**

v.

**UNITED STATES DEPARTMENT OF DEFENSE and Defense Logistics Agency, Defendants.**

**Civ. No. 92–1009–G (BTM).**

United States District Court, S.D. California.

April 2, 1993.

Grant L. Clark, McKenna & Cuneo, San Diego, CA, for plaintiffs.

Donald F. Shanahan, Asst. U.S. Atty., San Diego, CA, for defendants.

## MEMORANDUM DECISION AND ORDER

GILLIAM, District Judge.

On January 25, 1993, motions for summary judgment by plaintiffs Joseph Silverman and Joseph Silverman doing business as Calendar Chemicals, and by defendant United States of America came on for hearing before the Honorable Earl B. Gilliam. Grant Clark appeared for plaintiffs, Donald Shanahan appeared for the government.

At the conclusion of the hearing, the court took the motions under submission. The parties were unable to arrive at a mutually satisfactory disposition of the case within fifteen days of the motion hearing, as had been suggested by the court. After considering all of the pleadings, memoranda of points and authorities, and after having heard and considered oral argument, the court denies the government's motion, and grants plaintiffs' motion for summary judgment. The Defense Logistics Agency's ("DLA") three-year debarment of plaintiffs was arbitrary, capricious and an abuse of discretion owing to its severity and the agency's apparent failure to consider mitigative facts surrounding Mr. Silverman's misdemeanor conviction for conversion of government property. Accordingly, the debarment will be terminated as of the date of this memorandum decision and order.

## FACTS

This action arises out of defendants United States Department of Defense and Defense Logistics Agency's debarment of plaintiffs from all government contracts for a period of three years. Plaintiff, Mr. Silverman, is an individual who does business as a sole proprietorship under the name of Calendar Chemicals. He is the only employee of Calendar. Since January 1984, he has sold cleaning products to the United States Navy, under federal government contracts. When Mr. Silverman could no longer meet the demand for his products while operating out of his residence, he entered into an agreement with P.M. Chemicals of San Diego, under which P.M. would produce Mr. Silverman's products exclusively for him. Under the agreement, Mr. Silverman remained involved in the production process and everyday activities of the business.

In June 1986, Mr. Silverman was required for the first time to fill out a Department of Defense Form 129. One of the questions on the form was a designation of the "type of business." There were seven choices and no category such as "other." Mr. Silverman narrowed down his choices to "regular dealer" and "manufacturer or producer" and ultimately chose "manufacturer or producer." Mr. Silverman decided not to chose "regular dealer" because it was defined as one who sells to the public in the usual course of business. "Manufacturer or producer" was defined as one operating or maintaining a warehouse that produces supplies on the premises that are offered to the government.

In September 1987, the Department of Defense ("DOD") froze Mr. Silverman's National Stock Numbers for all of his products. These numbers were critical to streamlining the ordering process for Navy customers. Although Mr. Silverman was not notified of the reason, the DOD froze the numbers because it believed that Mr. Silverman had misrepresented his status on the Form 129. Despite the freezing of the numbers Mr. Silverman continued to sell his products to the Navy from 1987 to 1991 under more than 600 federal government contracts.

In December 1988, Mr. Silverman and his fiance, Linda Mandala, who operated another company selling cleaning products, were notified that they were suspected of bid rigging and anti-competitive activities. Mr. Silverman and Mandala consented to an interview with Special Agent Sharon Woods from the DOD. Mr. Silverman and Mandala subsequently learned that Woods filed a report with the DOD in February 1989 alleging that Mr. Silverman had made a criminal false statement in April 1986 when he called himself a "producer" rather than a "dealer."

In January, 1990, Mr. Silverman and Mandala received grand jury subpoenas from the U.S. Attorney's office in Richmond, Virginia.

The subpoenas requested extensive documentation regarding government contracts. Mr. Silverman and Mandala fully complied.

In June 1991, Mr. Silverman requested reinstatement of the numbers that were cancelled in 1987. An Assistant United States Attorney in San Diego informed Mr. Silverman that he was under investigation for an allegedly false statement made on the Form 129 in 1986. The government claimed that when Mr. Silverman stated that he and not P.M. Chemical was the manufacturer or producer, he prevented DOD from getting the products from the true producer, which raised the price paid by the government. The AUSA said he was going to indict Mr. Silverman if he did not agree to plead guilty. Although Mr. Silverman believed that he had made the right choice on the form, he plead guilty to a misdemeanor count of conversion of government funds before Magistrate Judge McKee. Mr. Silverman was sentenced to a $250 fine and one year of unsupervised probation.

Although Mr. Silverman believed that the matter was closed, the Defense Logistics Agency of the DOD notified him that he was proposed for debarment from all government contracts based solely on his misdemeanor conviction. Mr. Silverman was also suspended pending the DOD's final decision. The effect of suspension is the same as that of debarment: The contractor may neither be solicited nor receive government contracts from any agency of the United States.

On March 10, 1992 Mr. Silverman presented a written brief in opposition to the proposed debarment. On March 18, 1992, Mr. Silverman appeared before Janet Cook, a Special Assistant for Contracting Integrity, to make a personal appeal that he not be debarred. On May 5, 1992, Mr. Silverman was debarred from all government contracts for three years based on the fact that he lacked the "present responsibility required of government contractors and that the protection of the government's interests require[d] the debarment."

## DISCUSSION

### Standard of judicial review.

■ Judicial review of an agency's decision to debar a government contractor is subject to review under the standards prescribed in the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701–706 (1988). Section 706(2)(A) of the APA states that a reviewing court shall "hold unlawful and set aside agency action ... found to be ... arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law". The reviewing court must "consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 416, 91 S.Ct. 814, 823–24, 28 L.Ed.2d 136 (1971). The agency's decision must be "reasoned and rational." *Chritton v. National Transportation Safety Board*, 888 F.2d 854, 856 (D.C.Cir.1989). The court's role is "to review the whole administrative record to determine whether there was a rational basis for the agency's action." *Caiola v. Carroll*, 851 F.2d 395, 398 (D.C.Cir.1988). Unless there is substantial evidence to support an agency's findings, a decision must be rejected as irrational. *Id.*

### Legal standards governing debarments.

The legal standards controlling DLA's imposition of debarment are set forth in the Federal Acquisition Regulation ("FAR"). 48 C.F.R., Chapter 1. The FAR emphasizes that the "serious nature of debarment and suspension requires that these sanctions be imposed only in the public interest and not for purposes of punishment." 48 C.F.R. § 9.402(b) (1992). While contractors who commit crimes may be debarred, the mere existence of such a cause does not compel debarment. Moreover, "the seriousness of the contractor's acts or omissions and any mitigating factors should be considered in making any debarment decision." FAR 9.406-1(a). Finally, the FAR requires that any period of debarment be "commensurate with the seriousness of the cause(s)." FAR 9.406-4(a).

■ The sanction of debarment is necessary to insure that government contracts are awarded only to responsible bidders. The ultimate inquiry in a debarment must be

directed to the "present responsibility" of the contractor. *Robinson v. Cheney*, 876 F.2d 152, 160 (D.C.Cir.1989). The agency is required to carefully consider any favorable evidence of responsibility to ensure that all findings of responsibility are based on the presence of a realistic and articulable threat of harm to the government's proprietary interest. *Id.* at 159–160. The *Robinson* court expressly admonished federal agencies that government contractors must be afforded a meaningful "opportunity to overcome a blemished past," to ensure that an agency "will impose debarment only in order to protect the government's proprietary interest and not for the purpose of punishment." *Id.*

The causes for debarment are given at FAR 9.406–2. Among those listed, a contractor may be debarred for a conviction for the "commission of fraud or a criminal offense in connection with (i) obtaining, (ii) attempting to obtain, or (iii) performing a public contract or subcontract." FAR 9.406–2(a)(1). In actions predicated upon a conviction, the debarment decision must be based on all the information in the administrative record. FAR 9.406–3(d). The facts underlying a conviction are, logically, not subject to dispute in a debarment proceeding, having been established beyond a reasonable doubt by the criminal adjudication. The debarring official should, however, consider the seriousness of the contractor's acts or omissions and any mitigating factors which may be present when making the decision to debar, and if so, in determining the length of the debarment. FAR 9.406–1(a), 9.406–3(d).

Debarment is thus a discretionary action designed to effectuate the government's policy of doing business only with responsible contractors. FAR 9.402(a). Debarment is imposed "only in the public interest for the Government's protection." FAR 9.402(b). In every case, the standard for debarment is the contractor's present responsibility for government contracting.

*Analysis.*

The DLA decision to debar Mr. Silverman came six years after he made the statement that underlies his misdemeanor conviction. During that time, the government, after suspending Mr. Silverman's National Stock Numbers and limiting his business, continued to let contracts to him. Mr. Silverman claims to have pled guilty to a misdemeanor and paid the $250 fine in order to end the matter and rebuild his business. (Plaintiffs' Memorandum of Points and Authorities for Summary Judgment, filed December 28, 1992, at 14–15.)

■ The standards governing debarment actions were applied in a factual context similar to that at bar in *Roemer v. Hoffmann*, 419 F.Supp. 130 (D.D.C.1976). In that case, a manufacturer's representative was convicted of wrongly accepting money. He was debarred for a period of three years. The court set aside the debarment, holding that the agency failed to consider evidence having a tendency to diminish the impact of the conviction on the contractor's present responsibility. The *Roemer* court's analysis of present responsibility was properly focused on the seriousness of the offense, the length of time that had passed since the offense, and the contractor's conduct in the interim. Had DLA applied these same principles, plaintiffs may well have been found to be presently responsible.

■ It appears to this court that DLA did not consider Mr. Silverman's reasons for pleading guilty to the misdemeanor charge of conversion of government property. DLA chose not to "undertake a *de novo* review of the facts established by the conviction." Administrative Record ("AR") at 11. Therefore, DLA essentially failed to consider the mitigating effects of Mr. Silverman's motivation in pleading guilty.

DLA's admitted refusal to consider these facts renders its decision arbitrary, capricious and an abuse of discretion. The fact that DLA continued to enter into contracts with plaintiffs for a period of six years following the events underlying the misdemeanor conviction calls into question the agency's conclusion that plaintiffs were not presently responsible in May 1992. The term of the debarment is thus inexplicably lengthy, owing primarily to DLA's admitted refusal to consider the mitigative facts surrounding the conviction. The agency's action is therefore insupportable under the standard articulated

in *Overton Park*. Accordingly, the debarment of plaintiffs from all government contracts will be terminated forthwith.

IT IS SO ORDERED.