**SHANE MEAT CO., INC. and H. Ronald Shane**

v.

**UNITED STATES DEPARTMENT OF DEFENSE and Defense Logistics Agency, Appellants.**

No. 85–1680.

United States Court of Appeals, Third Circuit.

Argued June 5, 1986.
Decided Sept. 8, 1986.

Edward S.G. Dennis, Jr., U.S. Atty., Walter S. Batty, Jr., Asst. U.S. Atty., Chief of Appeals, Catherine Votaw (argued), Asst. U.S. Atty., Philadelphia, Pa., for appellants.

Steven Schaars (argued), Clary, Lawrence, Lickstein & Moore, Springfield, Va., Jeffrey M. Miller, Nasuti & Miller, Philadelphia, Pa., for appellees.

Before ADAMS, WEIS, and HIGGINBOTHAM, Circuit Judges.

## OPINION OF THE COURT

A. LEON HIGGINBOTHAM, Jr., Circuit Judge.

This is an appeal from a final judgment of the district court setting aside the determination of appellant Defense Logistics Agency ("DLA") debarring appellees Shane Meat Company and H. Ronald Shane from contracting with the executive branch of the government for a period of three years. The district court found that the DLA determination to impose the maximum three-year term of debarment was "arbitrary, capricious, and an abuse of discretion" and remanded the case to the agency with instructions to reduce the term of debarment

to one year. Because we conclude that the district court exceeded its limited authority to review administrative decisions, we will reverse its judgment and reinstate the DLA determination.

## I.

Shane Meat Company ("Shane Meat") operates as a broker contracting with and between meat suppliers and institutional customers. The majority of its business is transacted with agencies of the United States government. The company employs five persons, including appellee Shane, its sole shareholder and president, and his wife.

On February 14, 1984, Shane Meat and Shane were indicted by a federal grand jury for conspiring to submit and submitting false claims to defraud the United States government. The indictment charged that contrary to the provisions of five contracts Shane Meat supplied the Defense Logistics Agency, an agency of the United States Department of Defense, with mislabeled meat containing filler material in the form of partially defatted tissue.[1] The DLA suspended Shane Meat and Shane from government contracting effective March 2, 1984, pending resolution of the criminal charges. On May 3, 1984, the district court dismissed the indictment and the DLA promptly terminated the suspensions without prejudice.

Subsequently, Shane Meat alone was re-indicted on substantially the same charges. The re-indictment charged one count of conspiracy to submit false statements in violation of 18 U.S.C. § 371, and five counts of submitting false statements in violation of 18 U.S.C. § 1001. On December 20, 1984 Shane Meat pleaded *nolo contendere* to the charges and was fined $25,000, which was later reduced to $20,000. On December 28, 1984, the DLA again suspended Shane Meat and Shane pending the

1. The contracts that are the focus of the judicial and administrative proceedings in this case were entered into in December, 1979 and January, 1980 pursuant to specifications calling for shipment of 100% beef. The total value of the five contracts was $7,086.75.

outcome of DLA debarment proceedings.[2] Shane Meat and Shane then filed a complaint in the district court challenging the suspensions and ongoing debarment proceedings. During the pendency of the complaint, Shane and counsel for the appellees met personally with William H. Carroll, Special Assistant for Contracting Integrity at the DLA, to present information and to offer arguments opposing the proposed debarments. On April 29, 1985, Carroll rendered a final administrative decision debarring Shane Meat and Shane from contracting with the federal executive branch for the maximum-allowable period of three years.[3]

The parties thereafter filed cross-motions in the district court for summary judgment on the debarment issues. The court denied both motions, but nonetheless held that the three-year debarment period was arbitrary and capricious and remanded the case to the DLA for imposition of a one-year debarment instead. This appeal by the DLA and the Department of Defense ensued.

## II.

The issue here is whether the DLA decision to debar Shane Meat and Shane for three years could be properly set aside by the district court as "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" according to the Administrative Procedure Act, 5 U.S.C. § 706(2)(A).

██ The gravamen of our difference with the district court is what we deem to be its confusion regarding the standard of review in this case. The district judge does not sit as an agency official responsible for weighing evidence and making the initial debarment decision. Rather, s/he is limited in her or his authority to finding wheth-

er the agency action was "rational, based on relevant factors, and within the agency's statutory authority." *Frisby v. United States Department of Housing and Urban Development*, 755 F.2d 1052, 1055 (3d Cir.1985). *See also Motor Vehicle Manufacturers Association v. State Farm Mutual Automobile Insurance*, 463 U.S. 29, 42–43, 103 S.Ct. 2856, 2866–67, 77 L.Ed.2d 443 (1983) (acquiescing to the stated formulation of the standard of review). Thus, to find an agency action arbitrary or capricious under § 706(2)(A), a court must first "consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 416, 91 S.Ct. 814, 824, 28 L.Ed.2d 136 (1971). *See also Motor Vehicle Manufacturers*, 463 U.S. at 43, 103 S.Ct. at 2866–67 (same); *Bowman Transportation v. Arkansas-Best Freight System*, 419 U.S. 281, 285, 95 S.Ct. 438, 441–42, 42 L.Ed.2d 447 (1974) (same). However, "the ultimate standard of review is a narrow one. The court is not empowered to substitute its judgment for that of the agency." *Citizens to Preserve Overton Park*, 401 U.S. at 416, 91 S.Ct. at 824. Failure of the agency to address an important aspect of the issue under consideration may be fatal to its conclusion. But where, instead, the agency action is based on the relevant factors and establishes a rational connection between the facts found and the decision made, the court should not set aside the action as arbitrary and capricious. *See Frisby*, 755 F.2d at 1055.

## III.

██ The relevant factors to be considered in a debarment proceeding are set forth in the Federal Acquisition Regula-

---

2. Though not a defendant in the second criminal action, Shane was also subject to the suspension and debarment proceedings in accordance with the Federal Acquisition Regulations, 48 C.F.R. Subpart 9.4 (1984). The fraudulent conduct of the company is made imputable to Shane, its sole owner and president, by the provisions of 48 C.F.R. §§ 9.407–5 and 9.406–5(b)(1984).

3. The debarment of a contractor by one executive agency extends as well to all other executive agencies, subject to exceptions for "compelling reasons." 48 C.F.R. § 9.406–1(c)(1984). In imposing the term of debarment, Carroll properly adjusted the three-year period to credit Shane Meat and Shane with the time they were suspended after both the first indictment and the later plea, pursuant to the mandate of 48 C.F.R. § 9.406–4(a)(1984). The debarment was therefore made effective through October 23, 1987.

tions, which provide that "the seriousness of the contractor's acts or omissions and any mitigating factors should be considered in making any debarment decision." 48 C.F.R. § 9.406–1(a) (1984). Shane and his counsel submitted five mitigating factors for consideration by Special Assistant Carroll: (1) a denial of culpability by Shane Meat based on its *nolo contendere* plea to the criminal charges, (2) the fact that the offenses were then over five years old, (3) the insignificant financial impact of Shane Meat's conduct, (4) the company's satisfactory contract compliance subsequent to the offenses, and (5) the periods of suspension already served. These alleged mitigating factors notwithstanding, Carroll ordered the debarment of Shane and Shane Meat for the maximum term of three years.

The core of the district court's rationale for reversing the agency was as follows:

> [I]t is apparent that Mr. Carroll's decision to debar the plaintiffs for the maximum period of three years was not based upon a consideration of the relevant factors. Although Mr. Carroll was aware of certain mitigating factors, he misconstrued or ignored the evidence before him concerning these factors. It thus is unclear "what it was about the offense which necessitates, despite these factors, a debarment of three years." *Roemer v. Hoffman* (sic), 419 F.Supp. 130, 132 (D.D.C.1976). It appears to this court that, in view of the mitigating factors which were before Mr. Carroll, a shorter debarment period is justified. Therefore, this court finds that the decision to debar H. Ronald Shane and Shane Meat Co., Inc. for the maximum period of three years is arbitrary, capricious, and an abuse of discretion.

App. at 418a–419a.

Several times in his memorandum opinion the district judge acknowledged that "debarment of the plaintiff was authorized." *E.g.*, App. at 413a. Having correctly recognized that a debarment was within the agency's power to impose the district court was left only with the simple issue of whether a contractor's conduct that was sufficiently egregious to justify debarment for at least one year could not reasonably be viewed by an administrator as justifying debarment for three years. The district court's opinion is devoid of any reasoning that explains its conclusion that a three year debarment was arbitrary while a one year debarment was appropriate. While there are no "bright lines" delineating arbitrariness, the district court's conclusionary declaration that a one year debarment of appellees was justified but that a longer debarment would be arbitrary or capricious cannot be sustained absent a carefully reasoned analysis explaining the demarcation at one year despite explicit administrative regulatory authorization of debarment for up to three years. *See* 48 C.F.R. § 9.406–4(a)(1984). The district judge did not provide such an analysis and thus failed to establish that there was no "rational connection between the facts found and the [three year] choice made" by the agency.

By interposing its own judgment on this evidentiary record, the district court exceeded its limited scope of review. Special Assistant Carroll's debarment decision on its face gave consideration to the relevant factors that are required by the regulations and were urged by the appellees. He cited the conduct of Shane Meat in the five contracts and concluded that it "seriously and directly affects the present responsibility" of both Shane Meat and Shane to operate as government contractors. *See* App. at 73a. In addition, Carroll considered each of the five mitigating factors submitted by Shane and his counsel. App. at 72a–74a. Since a *nolo contendere* plea is the equivalent of a conviction for the purposes of debarment,[4] Carroll properly dismissed the denial of culpability (mitigating factor no. one) as "not an issue." App. at 74a. Carroll further ruled that Shane's emphasis on the financial insignificance of the past wrongdoing (mitigating factor no. three) did not address the government's interest

---

**4.** 48 C.F.R. § 9.403(1984) provides in relevant part as follows: "'Conviction' means a judgment or conviction of a criminal offense ... whether entered upon a verdict or a plea, and includes a conviction entered upon a plea of nolo contendere."

in the integrity of its contracting system. Carroll also fully credited the company and Shane with the time they had been suspended (mitigating factor no. five), adjusting the term of debarment to account for "the duration of the initial suspension" as well as the time immediately preceding debarment. Finally, Carroll's findings acknowledge that Shane Meat's criminal conduct had occurred several years ago (mitigating factor no. two) and that the company's contract performance had thereafter been satisfactory (mitigating factor no. four). While Carroll discounted the mitigating effect of these final two factors, he did so for rational and clearly articulated reasons. Carroll explained that Shane had not demonstrated any operational changes by the company that would preclude recurrence of the criminal conduct. Shane himself, and apparently the remaining company employees, all retained the same roles and responsibilities that they had at the time of the criminal acts. Similarly, there had been no changes in accounting procedures, inspection, or distribution since that time. Carroll rejected Shane's argument that the likelihood of continued monitoring by the DLA was sufficient to ensure future compliance.

Taking these facts into account, Carroll found that the presentation by Shane and his counsel left "considerable doubt" about the appellee's present responsibility to contract and about the protection afforded the government in its future dealings with Shane Meat. He thus concluded that, despite the mitigating factors suggested by the appellees, a maximum term of debarment was necessary to protect the government's interest.

On the facts of this case we find that the three-year term of debarment cannot be fairly characterized as punitive. Carroll's emphasis on protecting the government's interest is in accord with the purpose of debarment as expressed in the regulations. *See* 48 C.F.R. § 9.402(b)(1984). A debar-

ment determination is necessarily a discretionary action, *see* 48 C.F.R. §§ 9.402(a) and 9.406–1(a)(1984), and, as noted above, a three-year period of debarment is permissible under 48 C.F.R. § 9.406(a).

In addition, we are unconvinced that the DLA debarment decisions relied on by the appellees support the conclusion that leniency should be accorded in this case. Those decisions are factually distinguishable from the instant appeal in that they involve either situations where fewer criminal violations had been committed or those in which settlement agreements had resulted in significant personnel or operational changes by the contractor to protect the government's interests. *See, e.g., National Semiconductor Corp.* (DLA, August 6, 1984); *Rudolph Stanko and Henry Starke, Jr.* (DLA, June 28, 1982). Although it may have been difficult for a company the size of Shane Meat to duplicate some of the remedial measures adopted in those settlements, Shane Meat instituted *no* remedial measures at all and further insisted that none were necessary. The district court either overlooked or misunderstood this important and reasonable element in Carroll's determination.

■ Nor can a comparison of the term of debarment and the available criminal penalties support a finding that the debarment was punitive in nature.[5] A debarment need not be proportional to the severity of a prior criminal sentence, for a criminal sentence is a statutory sanction quite distinct from a debarment. A criminal sentence constitutes punishment for *past* wrongdoing. In contrast, a debarment is designed to insure the integrity of government contracts in the immediate present and into the future.[6] Toward that end, the maximum term of debarment may be, under certain conditions present here, justifiably imposed even though the criminal sentence is relatively more moderate. Such a result is also consistent with the deference and presumption of regularity due an agency decision.

**5.** Both of the relevant criminal statutes, 18 U.S.C. §§ 371 and 1001, provide a maximum penalty of a $10,000 fine or five years imprisonment, or both. Thus, Shane Meat was at most subject to a $60,000 fine for conviction on six counts, but was fined only $25,000.

**6.** *See* 48 C.F.R. § 9.402(a)(1984): "Agencies shall solicit offers from, award contracts to, and

*See Citizens to Preserve Overton Park,* 401 U.S. at 415, 91 S.Ct. at 823; *Frisby,* 755 F.2d at 1055.

 Special Assistant Carroll clearly considered the relevant factors established by the administrative regulations when he ordered Shane Meat and Shane debarred for a period of three years. He also articulated rational connections among the protective purpose of the proceeding, the facts found, and his final decision. The decision evidences no clear error in judgment. These elements are all that is required to uphold the agency action on review. The district court's disagreement with Carroll's determination of the weight of the mitigating factors and his construction of the evidence was a substitution of its own judgment for that of the DLA and was improper. It follows that the district court's reliance on *Roemer v. Hoffmann,* 419 F.Supp. 130 (D.D.C.1976) is misplaced. The district court in *Roemer* remanded a debarment decision to the Department of the Army after finding that it was impossible to determine from the decision why little or no importance was attributed to the mitigating factors submitted and why a three-year debarment was necessary despite those factors. Even if *Roemer* were analogous to this case, at most it would counsel the district court to remand for further consideration of the mitigating factors, rather than to impose its own view of a reasonable debarment period. Here remand is entirely inappropriate, however, because Carroll explicitly articulated his reasons both for weighing each mitigating factor as he did and for concluding that there was "no compelling reason to believe the Government is protected from a recurrence of the wrongdoing." App. at 74a; *cf. Agan v. Pierce,* 576 F.Supp. 257, 261–62 (N.D.Ga.1983). Thus, unlike *Roemer* where the debarment decision lacked the specificity necessary to allow that court to "exercise properly its limited review of the substance of the administrative decision," *Roemer,* 419 F.Supp. at 132, here the DLA

consent to subcontracts with *responsible contractors only.* Debarment and suspension are discretionary actions that ... are appropriate means to effectuate this policy." (Emphasis added). *See also* The Department of Defense

decision was sufficiently clear and complete not only to enable judicial review but also to require affirmance of the agency's action.

For the foregoing reasons, the judgment of the district court will be reversed.

Acquisition Regulations, 48 C.F.R. § 209.406–1(d) (effective October 1, 1985) (adding new language which relates the term of debarment to the time needed by the contractor to effect changes responsive to the criminal conduct).