Jonathan D. Schiffman, Philadelphia, Pa., for James Slocum, t/a 76 Carriage Co. Inc.

## MEMORANDUM AND ORDER

**SOCIETY HILL CARRIAGE CO., LTD.**

v.

**NATIONAL PARK SERVICE, et al.**

Civ. A. No. 88-5155.

United States District Court, E.D. Pennsylvania.

March 22, 1989.

JAMES McGIRR KELLY, District Judge.

This matter comes before the court on the motion of defendants National Park Service, Hobart G. Cawood, and Robert J. Byrne (federal defendants) for summary judgment in their favor and against plaintiff Society Hill Carriage Company, Ltd. (Society Hill Carriage) on the plaintiff's claim. The following facts are undisputed. Society Hill Carriage is a carriage company, licensed by the Pennsylvania Utilities Commission, which provides horse drawn carriage rides around the Independence Mall area of Philadelphia. Society Hill Carriage is one of five carriage companies in Philadelphia which provide such a service and which are regulated by the National Park Service. The National Park Service issues permits to each carriage company, allowing them to solicit riders and park their carriages only in specified portions of the Independence Mall area.

The National Park Service (NPS) has the responsibility, as a service of the Department of the Interior, for managing Independence National Historical Park. Regulations, promulgated pursuant to statutory authority, *see* 16 U.S.C. §§ 3, 20a, establish the authority for NPS to provide for the proper use of park areas. NPS has the authority pursuant to these regulations to

issue permits for the operation or solicitation of any business within the park areas. 36 C.F.R. § 5.3 (1988). Defendant Hobart G. Cawood (Cawood) is being sued in his official capacity as Superintendent of Independence National Historical Park (Park) and Defendant Robert J. Byrne (Byrne) is being sued in his official capacity as Chief Ranger of the Park.

Plaintiff Society Hill Carriage has been permitted to operate a carriage business in the Park area since 1986. In February of 1988, prior to the expiration of Society Hill Carriage's annual permit, NPS sent a letter to Society hill Carriage requesting suggestions for any changes to the current permit provisions. Society Hill Carriage responded by suggesting several changes, one of which proposed the adoption of a different method of allocating the use of the Park's carriage stand and rider solicitation areas between the five carriage companies.

On April 12, 1988, Byrne, on behalf of NPS, forwarded a permit application to the carriage companies, and included a synopsis of the proposed changes and the action taken by NPS regarding the proposals. NPS at that time rejected Society Hill Carriage's proposal to rotate the use of the carriage stand on the west side of Fifth Street among all of the companies. Byrne wrote to plaintiff again, on April 20, 1988, and stated that NPS was still considering rotating the use of the Fifth Street stand. Byrne reiterated this position in a letter to plaintiff dated April 27, 1988. NPS notified plaintiff on June 22, 1988 that the agency had made a final decision to reject his proposal to change the allocation of the use of the carriage stands.

The present arrangement permits each of the five carriage companies to have a carriage in the waiting zone on Sixth Street. Additionally, each of the five companies is permitted to have a carriage in the stand on Chestnut Street near the corner of Sixth Street. Society Hill Carriage is permitted to have a carriage in the stand on Fifth Street, near the corner of Chestnut Street. The other four companies are not permitted to have a carriage in the Fifth Street stand, but each of them is permitted to have a carriage in the stand on Chestnut Street near the corner of Fifth Street.

Society Hill Carriage proposed a change that would require all five of the carriage companies to rotate in the use of the Fifth Street stand. Society Hill Carriage alleged in its proposal to NPS and alleges in its amended complaint that the Fifth Street stand is the least desirable and least profitable location.

Plaintiff Society Hill Carriage has requested in its complaint that NPS be ordered to institute the proposed plan of reallocating the use of the carriage stands in the Park. Society Hill Carriage asserts that the federal defendants' rejection of its plan to change the terms and conditions of its April 1988–April 1989 permit was arbitrary and capricious, and violated the plaintiff's fifth amendment rights. Plaintiff claims that the present arrangement unfairly discriminates against it, in favor of the other companies, and that there is no rational basis upon which the federal defendants have based their decision to continue the present allocation of use of the carriage stands in the Park.

The federal defendants assert, as the basis for their summary judgment motion, that the NPS decision rejecting plaintiff's proposal was based on careful consideration of the relevant factors and was not arbitrary and capricious. The federal defendants contend that the decision not to change the pattern of use of the carriage stands was based on the rationale that the newest permittee gets the least desirable location and on an analysis of the historical pattern of use of the stands.

In response, plaintiff Society Hill Carriage agrees that the applicable standard of judicial review of the action of NPS is whether the action was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A), and that the court must focus on the rationality of the connection between the facts found and the decision made by the agency. *See Shane Meat Co. v. United States Dept. of Defense,* 800 F.2d 334, 336 (3d Cir.1986). Society Hill Carriage asserts, however, that the decision of

the federal defendants to reject plaintiff's proposal and to continue the status quo lacks sufficient rational basis, and that the real reason for the decision was to avoid confrontation with the other carriage companies. Society Hill Carriage additionally points out that its plan represents the fairest allocation of the available spaces in the carriage stands in the Park area.

This court's standard of review of the decision of the NPS "is a narrow one. The court is not empowered to substitute its judgment for that of the agency." *Id.* (quoting *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971)). The appropriate inquiry is whether the decision was rational and based on the factors relevant to the decision. *Id.* (citing *Frisby v. United States Dept. of Housing and Urban Development,* 755 F.2d 1052, 1055 (3d Cir.1985)).

NPS articulated the reasons for rejecting plaintiff's proposed changes in the use of the carriage stands in its letter of April 12, 1988, which included a synopsis of the comments and proposals for changes to the terms of the carriage operation permits and the consideration given and action taken on each of the proposals. *See* Administrative Record at 23. In that letter, NPS stated that it had considered the circumstances surrounding the initial grant of a permit to Society Hill Carriage, at which time NPS had explained to Society Hill Carriage, the fifth company to seek such a permit, that permits covering the available spaces on Chestnut Street had already been issued. *Id.* NPS further noted that it had explained at that time, in 1986, that while there was space for one more carriage on Chestnut Street at the Sixth Street end, an additional space would be needed on Fifth Street, and that NPS would be willing to issue a permit for the carriage spot on Fifth Street should the city decide to establish a stand there. *Id.*

NPS, after reviewing the historical pattern of use of the carriage stands, reiterated its rationale that the newest permittee would receive the least desirable location, and concluded that this was not unfair in light of the awareness of Society Hill Carriage of this policy at the time its permit was granted. *Id.* NPS articulated this same position in the letter of April 27, 1988 and as the reason for the final rejection of plaintiff's proposal and the decision to continue the status quo as stated in the June 22, 1988 letter. *See* Administrative Record at 53, 56.

I conclude, after a review of the administrative record, the federal defendants' motion for summary judgment, and the plaintiff's response thereto, that the decision of NPS to maintain the current allocation of use of the carriage stands in the Park was based on a rational consideration of the relevant factors and circumstances and was not arbitrary and capricious. NPS has consistently relied on several reasons to support its allocation of the carriage stand spaces at the Park. NPS analyzed the historical pattern of use of the stands and concluded that continuation of that pattern would be fair, based on the rationale that the final permittee should receive the allocation for the least desirable space. The supplemental reason articulated as a basis for the decision of NPS was that at the time the fifth permit was granted to plaintiff, both NPS and the plaintiff understood that the plaintiff was willing to operate one of his carriages out of the Fifth Street stand in return for the support of NPS in getting the stand established.

Plaintiff Society Hill Carriage asserts that the federal defendants have distorted the character of the initial request of the plaintiff for the permit, and that plaintiff never specifically requested the exclusive allocation of the space in the Fifth Street stand. Nevertheless, the administrative record is clear. NPS originally issued a permit limiting plaintiff's second carriage to the use of the newly-created Fifth Street stand, and decided to reject plaintiff's proposal to change that pattern of space allocation two years later in 1988.

The decision of NPS was based on a rational consideration of the relevant factors, including the key factor of the historical pattern of use of the spaces, and on a conclusion that maintaining the status

quo was fair in light of that historical pattern and the absence of any change in circumstances. This court is not empowered to substitute its judgment as to what is most fair in place of the determination of that issue by NPS, when, as is the case here, that determination is based on a rational consideration of the relevant factors and circumstances. Therefore, the motion of the federal defendants for summary judgment will be granted.