**DELTA ROCKY MOUNTAIN PETROLEUM, INC.; Delta Petroleum Company, Inc.; Paul B. Maxwell; Jesse R. Swoap; Martyn J. Lucas; Michael R. Crotty; and 21st Century Lubricants, Inc., Plaintiffs,**

v.

**The UNITED STATES DEPARTMENT OF DEFENSE; the Defense Logistics Agency; and Karl Kabeiseman, in his official capacity as General Counsel, Defense Logistics Agency, Defendants.**

**Civ. A. No. 89–B–1766.**

United States District Court, D. Colorado.

Nov. 29, 1989.

Durward E. Timmons, Edward A. Gleason, and Brian G. Eberle, Sherman & Howard, Colorado Springs, Colo., for plaintiffs.

Kathleen Torres, Asst. U.S. Atty., Denver, Colo., for defendants.

## MEMORANDUM OPINION AND ORDER

BABCOCK, District Judge.

Oral argument on plaintiffs' complaint for permanent injunction was heard Wednesday, November 22, 1989 at 10:00 a.m. Both parties have submitted briefs and I have reviewed the administrative record. The facts are undisputed and the only issue in this administrative appeal is whether the Defense Logistics Agency (DLA) decision to debar plaintiffs from all government procurement and sales contracting for three years was arbitrary, capricious, and an abuse of discretion.

To find an agency action arbitrary or capricious under the Administrative Procedure Act (APA), 5 U.S.C. § 706(2)(A), I must first consider whether the DLA decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment. *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 416, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971). The ultimate standard of review is a narrow one. I may not substitute my judgment for that of the DLA. *Id.*

Plaintiffs contend that the DLA, in debarring plaintiffs, disregarded evidence of their present integrity and responsibility, and failed to give proper weight to my findings made at the April 18, 1989 criminal sentencing of plaintiffs Delta Rocky

Mountain Petroleum, Inc. (Delta–Denver), Maxwell, and Swoap. I disagree.

■ Debarment is an administrative action which excludes nonresponsible contractors from government contracting. *Caiola v. Carroll,* 851 F.2d 395, 397 (D.C.Cir.1988). Debarment is designed to insure the integrity of government contractors in the present and into the future. *Shane Meat Co., Inc. v. United States Dept. of Defense,* 800 F.2d 334 (3d Cir.1986). It is not penal in nature. 48 C.F.R. § 9.402(b).

■ The test for whether debarment is warranted is the present responsibility of the contractor. *Roemer v. Hoffman,* 419 F.Supp. 130, 131 (D.D.C.1976). In government contract law, "responsibility" is a term of art, defined to include the honesty and integrity of the contractor as well as the ability to successfully perform a contract. *Id.* A contactor can meet the test of present responsibility by demonstrating that it has taken steps to ensure that the wrongful acts will not recur. *Robinson v. Cheney,* 876 F.2d 152, 160 (D.C.Cir.1989). "A finding of lack of present responsibility, however, can be based upon past acts." *Lawrence C. Shank,* 83–1 BCA ¶ 16,439, p. 81,790 (1983).

■ Here, plaintiffs Delta–Denver, Maxwell, and Swoap were convicted of a crime in connection with the performance of a government contract. These convictions constituted "cause" for debarment under 48 C.F.R. § 9.406.2(a). *Caiola v. Carroll,* 851 F.2d at 397. However, "[t]he existence of a cause for debarment ... does not necessarily *require* that the contractor be debarred; the seriousness of the contractor's acts or omissions and *any mitigating factors should be considered* in making any debarment decision." 48 C.F.R. § 9.406–1(a). (First emphasis in original; second emphasis added).

48 C.R.R. § 209.406–1 sets forth the following mitigating factors to be considered in a debarment action:

(1) Whether the contractor had effective standards of conduct and internal control systems ... in place at the time of the activity on which the felony conviction was based or has adopted such procedures prior to any government investigation leading to the suspension or debarment proceedings;

(2) Whether the contractor made timely disclosure to the appropriate government agency;

(3) Whether the contractor cooperated fully with government agencies during the investigation and any court or administrative action;

(4) Whether the contractor has paid or has agreed to pay all criminal, civil, and administrative liability for the improper activity;

(5) Whether the contractor has made or has agreed to make full restitution, including any investigative or administrative costs incurred by the government;

(6) Whether the contractor has taken appropriate disciplinary action against the individuals responsible for the activity upon which the conviction was based, including dismissal when such action is warranted based on a consideration of all the available facts;

(7) Whether the contractor has implemented or agreed to implement remedial measures; and

(8) Whether the contractor has agreed to institute new or revised review and control procedures and ethics training programs.

Here, plaintiffs submitted the following mitigating factors for DLA to consider: (1) plaintiffs fully cooperated with all government entities and personnel during the government's investigation; (2) plaintiffs pled guilty to the criminal charges brought against them; (3) plaintiffs instituted a corporate code of business ethics; (4) plaintiffs purchased and installed at Delta–Denver additional tanks to ensure sufficient separate storage of all specified components used in blending government end oil products; (5) plaintiffs established an accurate and complete record keeping system; (6) plaintiffs' lack of prior criminal behavior; and (7) this Court's findings made at plaintiffs' April 18, 1989 sentencing hearing.

In its Memorandum of Decision on the Proposed Debarment of plaintiffs, DLA stated:

> The gravamen of [plaintiffs'] Counsel's response to the Notices of Proposed Debarment is that debarment is unnecessary to protect the Government's interests. Counsel's reliance on statements made by Judge Babcock during the sentencing of DRMP and Messrs. Maxwell and Swoap is misplaced. The court determined that the defendants before the court were guilty of cheating the Department of Defense and at that point the matter reverted to the Department of Defense for determination of Respondents' responsibility for contracting. The views of Judge Babcock are not to be taken lightly. It is important to note, however, that my inquiry must include considerations of the Respondents' responsibility as business partners who can be relied on to provide products that conform to contract requirements.... In regard to the question of Respondents' present responsibility I also considered Counsel's admission that his clients' actions did "impugn (sic) the integrity of the contracting system" Despite Counsel's claim that there was no harm to the Government, Counsel does not dispute the fact that Respondents did not provide the item contracted for by the Government....
>
> I have also considered the fact that the corporations are said to have cooperated in the investigation of the wrongdoing and that various measures have been taken to try to prevent a recurrence of such unethical practices in the future. Despite the reforms, however, the principal malefactors, Mr. Maxwell and Mr. Swoap, remain in control of the corporations, their policies, and daily operations. Thus, corporate management remains unchanged from the times involved in the criminal misconduct. Reforms are only as effective as the people responsible for carrying them out ... I have no confidence that the reforms alone are sufficient to protect the Government's interests or that, in the case of some economic necessity in the future, Mr. Maxwell or Mr. Swoap would not again countenance deviation from contract requirements for the financial benefit of the corporations....
>
> Respondents' submissions to date have not provided the assurances necessary to support a determination that they are now responsible, trustworthy business partners for the United States....

The DLA concluded that, despite the mitigating factors, a maximum term of debarment was necessary to protect the government's interests.

DLA's emphasis on protecting the government's interest is in accord with the purpose of debarment as expressed in the regulations. *See* 48 C.F.R. § 904(b). Moreover, although DLA did not explicitly articulate its consideration of each mitigating factor presented, or its reason for imposing the maximum three-year period of debarment, it is clear from the DLA Memorandum of Decision on the Proposed Debarment that DLA considered and weighed the mitigating factors submitted and concluded that the changes made were not substantive or sufficient to protect the government from a recurrence of the wrongdoing. *See Shane Meat Co., Inc.,* 800 F.2d at 339. The scope of my review is narrow and I cannot substitute my judgment for that of the DLA. *See Citizens to Preserve Overton Park, supra,* 401 U.S. at 416, 91 S.Ct. at 823. Accordingly, because the DLA decision debarring plaintiffs from government contracting for the three year period was based on a consideration of the relevant factors, I conclude that DLA's decision to order debarment was not arbitrary and capricious or a clear error of judgment.

Plaintiffs further argue that the government is collaterally estopped from asserting that plaintiffs lack present responsibility because it did not contest this question in its criminal presentation against plaintiffs. Again, I disagree.

Collateral estoppel precludes relitigation of issues acutally and necessarily decided in a prior action. *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 326, 99 S.Ct. 645, 649, 58 L.Ed.2d 552 (1979). It

can only be applied to subsequent actions when (1) the issue previously decided is identical with the one presented in the action in question; (2) the prior action has been finally adjudicated on the merits; (3) the party against whom the doctrine is invoked was a party or in privity with a party to the prior adjudication; and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action. *Matter of Lombard*, 739 F.2d 499, 502 (10th Cir.1984).

■ Issues determined in a criminal conviction may be accorded preclusive effect at a later administrative adversary proceeding if the normal standards for collateral estoppel are satisfied. *Chisholm v. Defense Logistics Agency*, 656 F.2d 42 (3d. Cir.1981). Hence, I must examine the record of the criminal proceedings to determine specifically the issues there decided. *Id.* at 48; *Appley v. West*, 832 F.2d 1021 (7th Cir.1987).

A review of that record demonstrates that plaintiffs have failed to meet the four criteria. In sentencing plaintiffs, I was required to, and did, consider the nature and circumstances of the offense and the history and characteristics of the defendants. 18 U.S.C. § 3553(a)(1). I also entered on the record my determination of the corporation's rehabilitation and present integrity. Nevertheless, the precise issue of plaintiffs' present responsibility was not litigated and necessarily decided adversely to the government. At the sentencing hearing, plaintiffs' counsel requested that the Court "offer some guidance to the Department of Defense" regarding waiver of debarment. Record, pp. 404-406. I then asked the government to respond to plaintiffs' request. The government stated:

> Our policy—and I have done these cases before—our policy has been to stay away from that, from making that type of recommendation. Certainly if we were asked about the extent of the corporation's cooperation, a factual type statement, we would make it. If I were asked if they cooperated, I would state that they did. I haven't seen a court make the kind of recommendation that has been requested here.
>
> The way I understand that process is that's some kind of business decision made by the appropriate people in that department and a business decision on behalf of the government that we felt we weren't really in a position to influence one way or the other.

Record, pp. 413-14.

It is clear from this exchange that the government had little incentive at the sentencing hearing to litigate aggressively the issue of plaintiffs' present responsibility. Thus, I conclude that the government is not collaterally estopped from asserting that plaintiffs lack present responsibility based upon my findings made at plaintiffs' sentencing hearing. Accordingly, IT IS

ORDERED that the DLA order debarring plaintiffs for the maximum three-year period is affirmed and judgment shall enter in favor of defendants against plaintiffs on their complaint.