Mirza ALI, Plaintiff,

v.

The UNITED STATES, et al, Defendants.

No. C96–2221–FMS.

United States District Court,
N.D. California.

June 27, 1996.

reason to know of the contractor's conduct. 48 C.F.R. § 9.406–5(b).

A contractor that is debarred or proposed for debarment is generally "excluded from receiving contracts, and agencies shall not solicit offers from, award contracts to, or consent to subcontracts with these contractors, unless the acquiring agency's head or designee determines that there is a compelling reason for such action." 48 C.F.R. §§ 9.405(a), 9.405(d). The General Services Administration ("GSA") compiles and maintains a current list of all contractors debarred, suspended, proposed for debarment, or declared ineligible by agencies. 48 C.F.R. § 9.404(a)(1).

David W. Anderson, Law Office of David W. Anderson, Concord, CA, for Mirza Ali.

John H. Hemann, U.S. Attorney's Office, San Francisco, CA, for Department of Health and Human Services, Donna Shalala, General Services Administration, David J. Barram, Terrence J. Tychan, Lloyd M. Weinerman, Rodney Benson, Alan Schoenberg, Marc R. Weisman, Small Business Administration, Philip Lader, U.S.

## ORDER DENYING PLAINTIFF'S REQUEST FOR TEMPORARY RESTRAINING ORDER

FERN M. SMITH, District Judge.

### Introduction

This action challenges the debarment of plaintiff Mirza Ali by the Department of Health and Human Services ("DHHS") in February, 1994. Plaintiff's motion for a temporary restraining order asked the Court to find his debarment invalid and to allow plaintiff to bid on government contracts. Plaintiff's motion was heard in an expedited manner on June 11, 1996.

### Regulatory Framework

#### I. Debarment procedures

■ The Federal Acquisition Regulations ("FAR"), 48 C.F.R., Chapter 1, allow federal agencies to "debar" a contractor from being awarded government contracts. "[A] debarment is designed to insure the integrity of government contracts...." *Shane Meat Co. v. United States Dept. of Defense,* 800 F.2d 334, 338 (3d Cir.1986); 48 C.F.R. § 9.402(a). Under the FAR, an agency may impose debarment for any "cause of so serious or compelling a nature that it affects the present responsibility" of the contractor. 48 C.F.R. § 9.406–2(c). The fraudulent conduct of a contractor may be imputed to any officer, director, shareholder, partner, employee, or other individual associated with the contractor who participated in, knew of, or had

#### II. Notice and opportunity to be heard

The first procedural step in debarment is a notice to the contractor of a proposed debarment. An agency proposing debarment must "afford the contractor (and any specifically named affiliates) an opportunity to submit, in person, in writing, or through a representative, information and argument in opposition to the proposed debarment." 48 C.F.R. § 9.406–3(b)(1).

If the debarring official determines that the contractor's submissions in opposition to the proposed debarment do not raise a genuine issue of material fact, the agency may make its decision on the basis of the information contained in the written record, including the information submitted by the contractor. 48 C.F.R. § 9.406–3(d)(2)(i). The debarring official must make the final decision on debarment within 30 working days after receipt of any information and argument submitted by the contractor, unless the debarring official extends this period for good cause. 48 C.F.R. § 9.406–3(d)(1).

If the debarring official determines that the contractor's submissions in opposition to the proposed debarment do raise a genuine issue of material fact, the agency must also "[a]fford the contractor an opportunity to appear with counsel, submit documentary evidence, present witnesses, and confront any person the agency presents...." 48 C.F.R. § 9.406–3(b)(2)(i). A designated fact finder will conduct the fact-finding proceeding.

The proceeding before the fact-finder will be limited to a finding of the facts in dispute as determined by the debarring official. 48 C.F.R. § H–104(a). The designated fact-finder will set a date for the fact-finding proceeding within 45 working days of the contractor's final presentation of matters in opposition to the proposed debarment. 48 C.F.R. § H–104(a).

## Facts

Mirza Ali was debarred because DHHS found that Mirza Ali's company, University Systems, Inc. ("USI"),[1] submitted a forged certification letter to the Social Security Administration ("SSA")[2] contracting officials and that Mirza Ali knew or should have known of the fraud.

The debarment arose out of a solicitation by SSA for proposals to supply computer workstations. USI submitted a proposal. After examining USI's proposal, SSA became concerned that the "mouse" device proposed to be supplied by USI had been manufactured in Taiwan, in violation of the Trade Agreement Act of 1979. In response to SSA's inquiries, USI submitted a letter purporting to be from a sales representative of the mouse manufacturer that verified that the mouse was manufactured in the United States; this letter was revealed to be a forgery. The GSA Board of Contract Appeals ("GSBCA") determined, after an evidentiary hearing, that USI had perpetrated a fraud on the government by submitting a forged certification letter.

On the basis of the evidence of fraudulent conduct presented at the hearing, the contracting officer for SSA determined that the integrity of the procurement process had been compromised and eliminated USI's bid by letter dated September 17, 1992. USI protested the exclusion on September 20, and the protest was denied. On February 3, 1993, SSA recommended that USI, Mirza Ali, and three USI employees be debarred based on the evidence adduced in the GSBCA proceeding.

After receiving SSA's recommendation, Terrence Tychan ("Tychan"), the Deputy Assistant Secretary for Grants and Acquisition Management for DHHS issued a notice of proposed debarment on February 18, 1993. The notice indicated that Mirza Ali could, within 30 days of receipt of the notice, submit in person, in writing, or through a representative, information and argument in opposition to the proposed debarment, including any information that raised a genuine issue as to material facts. Declaration of Terrence Tychan ("Tychan Decl."), at 6. Mirza Ali did not respond within 30 days. *Id.* DHHS sent a follow-up letter on May 6, 1993, which offered an additional opportunity to oppose the debarment. *Id.* On June 7, 1993, Mirza Ali responded and asked for an extension; DHHS gave Ali until June 25, 1993. Ali submitted an opposition, which was considered in DHHS' debarment of Ali.

Tychan determined that there was no genuine issue of material fact about whether the fraudulent behavior occurred. Tychan found that USI's fraudulent conduct could be imputed to Mirza Ali, pursuant to 48 C.F.R. § 9.406–3(b), because the record established that he either participated in the submission of the fraudulent certification to SSA or had reason to know of the fraudulent conduct. Tychan Decl. at 10. The evidence indicated that Mirza Ali was CEO of USI, was involved in USI's submission of its acquisition proposal to SSA, and had communicated with SSA's contract specialist about the particular laptop computer provided. Tychan Decl. at 5. In February 1994, Tychan debarred Mirza Ali, USI, and three other USI employees for three years, to begin retroactively on February 18, 1993 and to end on February 18, 1996. Mirza Ali's debarment expired by its own terms on February 18, 1996. Tychan Decl. ¶ 18.

## Discussion

**I. Legal standard for issuance of temporary restraining order**

■■■ The Ninth Circuit has not articulated a special test for temporary injunctions.

1. Mirza Ali and his wife, Sameena Ali, were the sole shareholders of USI. Mirza Ali was the Chief Executive Officer.

2. At the time, SSA was a sub-agency of DHHS; now, the two are separate executive agencies.

Courts therefore apply one of the two preliminary injunction tests, under which the moving party must show either "(1) a combination of probable success on the merits and the possibility of irreparable injury or (2) that serious questions are raised and the balance of hardships tips sharply in its favor." *Los Angeles Memorial Coliseum Comm'n v. National Football League,* 634 F.2d 1197, 1201 (9th Cir.1980). "Mandatory injunctions"—that is, those that seek to alter the status quo—are "particularly disfavored." *Stanley v. University of Southern California,* 13 F.3d 1313, 1319–20 (9th Cir.1994). When a mandatory injunction is requested, the "district court should deny such relief unless the facts and law clearly favor the moving party." *Id.* at 1320.

**A. Likelihood of success on the merits**

■ Mirza Ali claims, *inter alia,* that the debarment decision was arbitrary and capricious, that he did not receive due process prior to the debarment, that the debarment was retaliatory for his protest that USI was excluded from bidding on the SSA contract, and that DHHS was "estopped" from debarring him because a separate government agency had novated a USI contract from Mirza Ali to Sameena, Inc., a company owned by Mirza Ali's wife.

The Court finds that plaintiff is not likely to succeed on the merits. The administrative record reveals substantial evidence upon which the debarring official could have concluded that USI committed forgery and that plaintiff knew or should have known of the forgery.[3] Plaintiff presents no evidence to meet its burden of showing that the decision was arbitrary and capricious, an abuse of discretion, or not otherwise in accordance with law, as would be necessary for this Court to overturn it. *See* 5 U.S.C. § 706(2); *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 414, 91 S.Ct. 814, 822–23, 28 L.Ed.2d 136; *Robinson v. Cheney,* 876 F.2d 152, 155 (D.C.Cir.1989) (upholding debar-

ment decision under arbitrary and capricious standard).

Plaintiff also appears to have received all the due process guarantees required by the administrative regulations. Plaintiff was notified of his proposed debarment in writing; the notice informed plaintiff that he could submit an opposition to the debarment; and plaintiff submitted an opposition that was considered by Tychen when making the debarment decision. Plaintiff has also failed to present evidence showing that the debarment was retaliatory.

Finally, plaintiff's claim that all government agencies waived all fraud claims against him because of USI's settlement agreement in bankruptcy court or because the Department of Energy novated a contract from USI to Sameena, Inc. is meritless. No government agency was a party to the bankruptcy court settlement, and the settlement contains no provisions that purport to bind the government. The novation contract, to which the Department of Energy was the only governmental party, novated the contract *from* the Alis to Sameena, Inc. There is no indication that the Department of Energy anticipated any involvement of Mirza Ali in the performance of the contract by Sameena, Inc., nor that the Department found that Mirza Ali was a responsible contractor. Further, the novation contract cannot reasonably be read to waive claims against Mirza Ali for fraud, let alone *future* fraudulent action against different government agencies.

**B. Balance of hardships**

DHHS debarred Mirza Ali in February 1994, for the term of February 1993 to February 1996. Mirza Ali took no action to challenge the debarment before filing this action on May 22, 1996. Plaintiff's two-year delay in filing this action and in seeking an injunction is powerful evidence that he is not suffering irreparable harm. *See* 11A Wright & Miller, *Federal Practice and Procedure* § 2948.1 at 156 (2d ed. 1995) ("A long delay

---

**3.** The case, *Caiola v. Carroll,* 851 F.2d 395 (D.C.Cir.1988), relied on by Mirza Ali is distinguishable. In *Caiola,* the evidence showed that the corporate officers were not involved in the manufacturing or production operations or were merely figureheads of the corporation who did

not participate in the business. As discussed above, the administrative record contained evidence that Mirza Ali was involved in USI's business and, particularly, in the government contract that was determined to be fraudulent.

by plaintiff after learning of the threatened harm may be taken as an indication that the harm would not be serious enough to justify a preliminary injunction.").

 Further, any harm to plaintiff is economic or speculative, or both. Economic injury alone does not support a finding of irreparable harm. *Rent–A–Center, Inc.,* 944 F.2d 597, 603 (9th Cir.1991). Plaintiff claims that he is missing valuable opportunities to obtain government contracts. Debarment, however, is not sufficient to establish irreparable harm. *Mobley v. Cheney,* 1990 WL 141750, at n. 2 (D.D.C. Sept. 20, 1990).

Plaintiff also submits the declaration of Razia Begum, who declares that he would hire plaintiff as CEO of a newly forming business in the United States if he was not debarred. Begum has given Mirza Ali until midnight on Wednesday, June 13, 1996, to provide legal evidence that he is not debarred, or proposed to be debarred, or else Begum will hire another person for the position. Declaration of Razia Begum.

These allegations of economic hardship are not sufficient to overcome plaintiff's dubious chance of success on the merits, especially because plaintiff seeks a mandatory injunction. *See Stanley v. University of Southern California,* 13 F.3d 1313, 1319–20 (9th Cir. 1994) (mandatory injunction granted only if facts and law clearly favor moving party).

Further, the government has a strong interest in maintaining the integrity of its contractors. The government's interest is not merely economic, but involves its ability to protect itself from dishonest contractors. The balance of hardships does not tip in plaintiff's favor.

### Conclusion

Mirza Ali asks the Court to issue a mandatory injunction against his DHHS debarment two years after the fact and several months after the debarment has expired. There is no basis for emergency relief in this situation. Plaintiff's request for a temporary restraining order is DENIED.

SO ORDERED.