# AMERICAN COMPETITIVENESS INSTITUTE

v.

## Lewis CALDERA, Secretary of the Army.

### No. Civ.A.98–CV–6601.

United States District Court, E.D. Pennsylvania.

Dec. 23, 1999.

Charles H. Carpenter, Pepper, Hamilton & Scheetz, Washington, DC, for American Competitiveness Institute.

Asst. U.S. Atty., Richard Mentzinger, Jr., for Defendant.

## *MEMORANDUM & ORDER*

KAUFFMAN, District Judge.

American Competitive Institute ("ACI"), a losing bidder for a contract with the Army, seeks a mandatory injunction requiring the Army to cancel its contract with the successful bidder and to award the contract to ACI. Both ACI and the Army have moved for summary judgment. Because the evidence shows that the Army's conduct was not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C.A. § 706(2)(A) (1996), ACI's Motion for Summary Judgment is denied and the Army's Cross Motion for Summary Judgment is granted.

## *BACKGROUND*

On March 9, 1998, the Army issued an announcement "soliciting proposals for the establishment, organizational structure, and management" of "an Electronic Circuit Board Manufacturing Development Center," intended "to strengthen the U.S. Printed Circuit Board ... industry...." The announcement identified three criteria by which proposals would be judged: technology, management, and cost, and noted that the most important criterion was "background and experience in the area of [U.S. Printed Circuit Board]/electronics manufacturing technology." Also included was a statement that "[p]roposals should

consider collaboration with Historic Black College or Universities (HCBUs)/Minority Institutions (MIs) on education and training efforts as well as other aspects of the Center," and that "costs will be evaluated on the basis of cost realism." [1] ACI and IIT Research Institute ("IITRI") each submitted a proposal in response to the announcement.

The Army forwarded the two proposals to a committee made up of representatives from the Office of Naval Research, the Air Force Research Laboratory, Wright Patterson Air Force Base, the U.S. Army Communications and Electronics Command, and the U.S. Army Aviation and Missile Control. Between April 27 and May 6, 1998, the five-member committee evaluated the proposals using the criteria listed above in the Army's announcement. Each committee member numerically rated each proposal and prepared a "summary narrative" of his findings. Four committee members rated the IITRI proposal as superior, and one committee member rated the ACI proposal as superior. On May 7, 1998, the committee discussed the two proposals and reached the following conclusions:

> The ACI proposal was responsive to all aspects of the [announcement]. The offeror presented a novel approach to technology transfer along with the initial establishment of self sufficiency goals. The distributed network of national participants was also viewed as a strength by the [committee]. However, the centralized allocation of resources presented in the cost area did not support the distributed network concept. Other significant weaknesses of the ACI proposal included the lack of value added participation of [Historic Black College or Universities/Minority Institutions], no strong link to the [U.S. Printed Circuit Board] industry and proposed cost leveraging based on an unrealistic assumption of cost revenues.

> The IITRI proposal was also responsive to all aspects of the [announcement]. The offeror's proposal was strong in several key areas, including the strong link to the [U.S. Printed Circuit Board] industry, and the identification and planning of several potential projects. These strengths coupled with IITRI's aggressive start up plan were impressive to the [committee]. The demonstrated three to one cost share on previous tasks along with the excellent cost share identified for individual projects was identified as a significant strength in the cost area. The IITRI proposal weaknesses identified by the [committee] included a lack of innovation associated with technology transfer and the undefined involvement of [the Missile Research, Development, and Engineering Center] in the project selection process.

> Based on the above, the [committee] found that the IITRI proposal was the one meriting award.

(Pl.'s Ex. 7.) On May 28, 1998, an Army Grants Officer concurred with the committee's selection of IITRI for the award.[2]

On June 11, 1998, one of the committee members issued a memorandum to an

---

1. The Department of Defense Grant and Agreement Regulations provide:

   Historically Black colleges and universities (HBCUs) and other minority institutions (MIs).

   Increasing the ability of HBCUs and MIs to participate in federally funded, university programs is an objective of Executive Order 12876 (3 CFR, 1993 Comp., p. 671) and 10 U.S.C. § 2323. Grants officers shall include appropriate provisions in Broad Agency Announcements (BAAs) or other announcements for programs in which awards to institutions of higher education are anticipated, in order to promote participation of HBCUs and MIs in such programs. Also, whenever practicable, grants officers shall reserve appropriate programmatic areas for exclusive competition among HBCUs and MIs when preparing announcements for such programs. 32 C.F.R. § 22.325.

2. *See* 32 C.F.R. § 21.220 (setting forth authority and responsibility of grants officers).

Army contract specialist recommending that certain issues concerning costs "be addressed in discussions with [IITRI] before proceeding with [the] award." On June 17 and 18, 1998, the Army contract specialist sent to IITRI a "list of clarification points that need to be resolved before negotiations can take place," and requested "a response to these issues as soon as possible." IITRI responded to the issues.

Between June 29, 1998 and July 2, 1998, the Army and IITRI engaged in contract negotiations, and on July 2, 1998, they entered into a cooperative agreement. *See* 10 U.S.C.A. § 2358(b)(1) (1994); 31 U.S.C. § 6305(2) (1983). In a letter dated July 13, 1998, the Army notified ACI that its proposal "was not selected for award."

ACI instituted this action on December 18, 1998, and filed a Motion for Summary Judgment on June 17, 1999. The Army filed a Cross Motion for Summary Judgment on July 1, 1999. ACI contends that while evaluating the proposals of ACI and IITRI, the Army found that both proposals "raised issues which required elaboration," but "only permitted IITRI to elaborate upon its proposal. At no time did the Army conduct similar discussions with ACI that either let it clarify aspects of its proposal or, as IITRI did, to modify its proposal in response to specific concerns by the Army." (Pl.'s Mot. at 1.) The Army contends that it "sought certain clarifications from IITRI concerning its proposal" only after having completed its evaluation and having "determined that the IITRI proposal merited award." (Def's Mot. at 2.)

### STANDARD OF REVIEW

Title 28 U.S.C.A. § 1491(b)(4) (Supp. 1999) directs the Court to review the Army's decision pursuant to the standards set forth in the Administrative Procedures Act, 5 U.S.C.A. § 706 (1996), which provides, in relevant part: "The reviewing court shall ... hold unlawful and set aside agency action, findings, and conclusions found to be ... arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law...." 5 U.S.C.A. § 706(2)(A). "[T]o find an agency action arbitrary or capricious under § 706(2)(A), a court must first 'consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment.'" *Shane Meat Co., Inc. v. U.S. Dept. of Defense,* 800 F.2d 334, 336 (3d Cir.1986) (quoting *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971)). "The ultimate standard of review is a narrow one. The court is not empowered to substitute its judgment for that of the agency." *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971). Summary judgment therefore is appropriate in this case only if the record shows that there is no genuine issue as to whether the Army acted arbitrarily or capriciously in awarding its contract to IITRI and not to ACI. *See* Fed.R.Civ.P. 56(c).

### DISCUSSION

ACI argues that the Army failed to follow applicable regulations when evaluating the proposals and that this unexplained departure was arbitrary and capricious. The Department of Defense Grant and Agreement Regulations require Grants Officers to "use merit-based, competitive procedures ... to award grants and cooperative agreements ... [t]o the maximum extent practicable...." 32 C.F.R. § 22.305(b).

> Competitive procedures are methods that encourage participation in [Department of Defense] programs by a broad base of the most highly qualified performers. These procedures are characterized by competition among as many eligible proposers as possible, with a published or widely disseminated notice. Competitive procedures include, as a minimum:
>
> (a) Notice to prospective proposers....
>
> (b) At least two eligible, prospective proposers.

**464**

■■■■■■■■■■

(c) Impartial review of the merits of applications or proposals received in response to the notice, using the evaluation method and selection criteria described in the notice.....

32 C.F.R. § 22.315.

■■■■ ACI contends that the Army's review of the two proposals was not impartial, *see* 32 C.F.R. § 22.315(c), because it did not follow the Federal Acquisitions Regulations ("FAR") and because it requested clarification only from IITRI. Because the Department of Defense Grant and Agreement Regulations specifically state that "[p]olicies and procedures in the FAR ... do not apply to cooperative agreements," 32 C.F.R. § 21.110(c), the Court rejects ACI's contention that the Army was bound by the FAR. The Court also rejects the argument that the request for clarification indicates that the Army was partial to IITRI. The record shows that the Army made the requests only after the committee had completed its evaluations and had selected IITRI for the award, and only after the Grants Officer had concurred with the committee's selection. Under the circumstances, the requests for clarification do not suggest that the Army was partial to IITRI. *See Prudential–Maryland Joint Venture Co. v. Lehman,* 590 F.Supp. 1390, 1409–10 (D.D.C.1984).

### CONCLUSION

The record shows that the Army did not act arbitrarily or capriciously in awarding its contract to IITRI. Accordingly, it is **ORDERED** that ACI's Motion for Summary Judgment is **DENIED,** and the Army's Cross Motion for Summary Judgment is **GRANTED.** *See* Fed.R.Civ.P. 56(c).